**David KAISER, individually and the Public Safety Employees Association, Appellants,**

v.

**Robert SUNDBERG, Commissioner of the Department of Public Safety; Michael Kolivosky, an employee of the Department of Public Safety; Lisa Rudd and Frank Raye, employees of the Department of Administration; and the State of Alaska, Appellees.**

**No. S–834.**

Supreme Court of Alaska.

March 13, 1987.

William K. Jermain, Constance E. Livsey, and George T. Freeman, Jermain, Dunnagan & Owens, Anchorage, for appellants.

Virginia B. Ragle, Asst. Atty. Gen., and Harold M. Brown, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This action arises from four promotion decisions made by the Alaska Department of Public Safety (ADPS) in 1981. Plaintiffs David Kaiser and the Public Safety Employees Association (PSEA) challenge the validity of certain standard operating procedures (SOPs) of the Division of Personnel, Alaska Department of Administration (Division). Kaiser and PSEA contend that those SOPs which govern the promotion process violate the merit principle set forth in Article XII, Section 6 of the Alaska Constitution[1] and provisions of the State Personnel Act, AS 39.25.[2] Kaiser and PSEA also argue that even if we find that the SOPs are valid, they were not complied with by the State in this instance.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Promotions within the state system are made through a competitive process which includes a written examination and a "Promotional Performance Evaluation" prepared by the appointing authority. The results of the competitive process are then submitted to the Division which prepares eligibile lists for the appointing authority—in this case, ADPS. The names of eligible employees are ranked starting with the recipient of the highest score attained in the competitive process. When the agency wishes to fill a vacant position it requests that the Personnel Director of the Division (Director) send the agency the current eligibile list. After receiving the list, the agency may hire any employee from among the top five available applicants on the eligible list.[3] *See* State Personnel Rules 5 02.1, 5 02.4.[4] (hereinafter PR).

The Division has issued written SOPs that interpret the Personnel Rules and specify a method to be used by the appointing agency to determine which persons are available to be considered as the top five applicants. The SOPs contain a coding sys-

---

1. Art. XII, § 6 provides:
   The legislature shall establish a system under which the merit principle will govern the employment of persons by the State.

2. Title 39, Chapter 25 generally covers the application of the merit system through the Department of Administration, Division of Personnel.

3. Since applicants with identical scores are ranked equally there may be more than five persons in the top five ranks. PR 5 02.2.

4. The current personnel rules are codified at 2 AAC 07.005—.999 as a result of the 1982 amendment to AS 39.25.140(e) mandating publication of personnel rules in the Alaska Administrative Register and Code.

tem which specifies the reason any particular applicant may be determined "unavailable" for a position.[5] The top five applicants will change as persons are determined to be unavailable. For example, if the top five candidates were A, B, C, D, and E, and A and E were determined "unavailable" as defined by the SOPs, the selection could be made from B, C, D, F, and G.

In 1981, ADPS had four vacant lieutenant positions, two in Anchorage, one in Sitka and one in Nome. Kaiser was ranked fifth on the eligible list. In a Stipulation filed by the parties, they described the selection process for the four positions. The person ranked third had indicated by written memorandum that he was not interested in any position, and therefore, the appointing authority considered five "available" applicants for the first position, excluding the third ranked person.[6] The person ranked fifth was appointed. The appointing authority, then, considered five additional applicants for the second position. The new person ranked fifth was hired. Because the appointing authority apparently believed Kaiser had stated he was not interested,[7] the five "available" applicants it considered for the third position included two new names on the list. The fourth ranked person was hired. The appointing authority again considered five applicants for the fourth position. The person ranked fifth was selected.

As a result of the four employment decisions described above, five persons on the eligible list were passed over for promotion, including Kaiser. Effective July 16, 1982, three of those persons were promoted to other lieutenant positions which became vacant at that time. David Kaiser had not been promoted at the time this suit was instituted.

Following this selection process Kaiser and PSEA filed this suit challenging the legality of the selection procedures. Several aspects of the litigation were settled through a grant of partial summary judgment and an agreement of partial settlement and consent decree. Pursuant to the agreement, the plaintiffs filed a second amended complaint, challenging the selection process as a violation of the merit system and personnel rules. The parties filed cross motions for summary judgment on liability. The superior court granted the State's motion and held that the SOPs did not violate the Alaska Constitution, the State Personnel Act, or the personnel rules. This appeal ensued.

## II. STANDARD OF REVIEW

The trial court applied the substitution of judgment standard of review to interpret the SOPs and Personnel Rules. Kaiser and PSEA contend that this was appropriate since only legal issues are disputed. The State argues that the appropriate standard is the reasonable basis test, generally utilized when reviewing matters involving agency expertise.

In *Kelly v. Zamarello*, 486 P.2d 906, 916–17 (Alaska 1971), we recognized two distinct types of administrative decisions on questions of law. "One type involves questions in which the particularized experience and knowledge of the administrative personnel goes into the determination." *Id.* at 916. In this situation, deference should be

**5.** *See infra* note 13.

**6.** Because the third ranked person was excluded, Kaiser moved up to fourth on the eligibility list.

**7.** Kaiser was eligible for each of these four promotions because of his fifth ranked position on the eligibility list. Deputy Director of Troopers, Lieutenant Colonel Vaden, met with Kaiser before the promotion selections were made. Kaiser indicated that he was not informed of the purpose of the meeting prior to or during the meeting. He was not specifically informed by Vaden that the meeting was to determine his availability for the positions. Kaiser further stated that he was not informed that a negative answer to a general question regarding his willingness to transfer would result in being removed from consideration for the Nome and Sitka positions.

Vaden stated that Kaiser indicated that he was concerned about his wife's career when asked about his willingness to accept a transfer. Vaden stated that he was left with a clear impression that Kaiser would not be interested in a promotion and therefore marked him "not interested."

given to the agency and a reasonable basis standard of review applied. *Id.* "The other kind of case presents questions of law in which knowledge and experience in the industry affords little guidance toward a proper consideration of the legal issues. These cases usually concern statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and experience." *Id.* In these cases the court substitutes its judgment for that of the agency. *Id.*

■ In this case, the latter approach is appropriate. The question of whether the Division has abused its authority by delegating too much responsibility to the appointing agencies does not involve agency expertise. It is purely a matter of statutory interpretation. This is a task for which we have specialized knowledge and experience. Thus, we must use our independent judgment to determine whether the Division of Personnel has abdicated its statutory authority by delegating its power to determine "availability" in the certification process, and to determine whether the State had complied with the procedures mandated by the SOPs.

## III. DELEGATION TO THE APPOINTING AUTHORITY DOES NOT VIOLATE CONSTITUTIONAL OR STATUTORY PROVISIONS

■ Article XII, Section 6 of the Alaska Constitution provides that "[t]he legislature shall establish a system under which the merit principle will govern the employment of persons by the State." [8] Toward that end the legislature enacted the State Personnel Act (Personnel Act) in 1960. AS 39.25.010–.220. The Personnel Act establishes a Division of Personnel within the Department of Administration, which includes a Personnel Board. AS 39.25.030. The Commissioner of Administration appoints a Director of Personnel to head the division. AS 39.25.040. The Director is responsible to the Commissioner for execution of the duties and responsibilities imposed by the Personnel Act. *Id.* The Director has certain enumerated powers which include administering the personnel rules, AS 39.25.050(1); establishing and maintaining a roster of employees, AS 39.25.050(5); and preparing rules, not inconsistent with the Personnel Act, to implement the Personnel Act's mandate, AS 39.25.050(6). AS 39.25.150 provides generally for the scope of the personnel rules. AS 39.25.150(4) specifically provides for "the establishment and maintenance of eligible lists for appointment and promotion providing the names of eligible candidates in order of their relative performance in the examinations."

The selection and appointment of an individual is essentially a two-step process. Individuals who have applied for and met the job specifications are *always* certified to the eligibile list by the Division. Appointing authorities have no voice in this process. When a position is vacant, the Director certifies "the names from the appropriate eligible list" to the appointing agency. PR 5 02.0. Appointments can be made from the top five "available eligibles on the certification" list. PR 5 02.1. The appointing authority, using the criteria set forth in the SOPs, then determines the availability of those certified eligibles and makes its promotion decisions.

The personnel rules provide for promotions to be made from this eligibile list certified by the Director. PR 5 01.0; 5 02.0. The rules further provide that the Director may determine active and inactive status of employees on the list and remove names of those "unavailable." PR 4 04.0

The SOPs, promulgated by the Division, grant the *appointing agency* the power to remove unavailable and inactive employees under specified conditions. *See* Personnel Memorandum 64–2 and SOP 5–83–005.

---

8. The plaintiffs contend that the State has violated the constitutional mandate embodied in Article XII, Section 6 of the Alaska Constitution. It is not necessary for us to reach the constitutional argument, since we can resolve this issue on statutory grounds. *See, e.g., Escambia County v. McMillian,* 466 U.S. 48, 51, 104 S.Ct. 1577, 1578, 80 L.Ed.2d 36, 39 (1984); *Deubelbeiss v. Commercial Fisheries Entry Comm'n,* 689 P.2d 487, 491 (Alaska 1984) (Compton, J. concurring).

Kaiser and PSEA challenge these SOPs as contrary to the merit system principle, the mandate of the Personnel Act, and the express provisions of the personnel rules. They contend that delegation in the area of eligibility certification should be impermissible because such delegation removes the authority to determine "availability" from a neutral entity, the Division to the appointing authority, which is most interested in the outcome of the selection process. They allege that because the appointing authority has "certification" power under the SOPs, it may make decisions based on personal and political favoritism—criteria expressly prohibited by the merit system. They believe that this particularly violates AS 39.25.150(5) which states that "[t]he personnel rules shall provide for the procedures for certifying eligible candidates."

The State argues that AS 39.25.150(23) and the Personnel Rules permit the delegation of the authority to determine availability. Personnel Rule 14 05.0 promulgated pursuant to AS 39.25.150(23), provides: "the Director may delegate personnel responsibilities and duties concerned with personnel to the principal departments covered by the Personnel Act." [9]

The personnel rules define "certification" as "the act of submitting *available* names on the eligible list to an appointing authority for the purpose of making an appointment." PR 1–1 *Definitions* (emphasis added). In March 1964, the Division issued a memorandum to all executive departments and agencies which outlined a change in the certification procedure. The new "continuation certification" method allowed the appointing agencies to receive a number of names in addition to the top three on the eligibility list.[10] This change in the certification procedure was made to ease the

problems arising through the certification procedure and the rapid turnover in the availability of applicants on the eligible registers. The effect of this new method was to delegate the authority for determining availability from the Division to the appointing agencies. As evidenced by the following cautionary note contained in the 1964 memorandum, the Division was clearly aware of the potential for abuse inherent in such a delegation:

> Careful use must be made of this new certification procedure. Improper action which results in the appointment of a person who is not actually among the top three available, as defined above, will result in an illegal appointment. Since selection must be made in this manner for each vacancy, *there can be only two eligibles marked NS on a certification* unless the original certification contains more than three names under Rule 5 03.12 and the continuation is not used. The continuation certification is based upon the belief that personnel involved in selection under the merit system have the intelligence and integrity to use the procedure properly as a means of eliminating or shortening some of the natural time lags involved in the certification process. The cooperation of all will be essential. Misuse of the procedure will force us to return to the straight three-name certification method.

(Emphasis in original).[11]

We, too, are concerned with the potential for abuse in granting the appointing agencies unfettered discretion in determining availability. However, the criteria for determining availability in the SOPs essentially parallel the criteria in the Personnel Rules. *See* SOP 05–83–005, PR 4 04.0 and 4 05.0.[12]

---

9. PR 14 05.0 is now codified at 2 AAC 07.930 which provides:

> The director may delegate personnel responsibilities and duties to the principal executive officer of principal departments of the executive branch. The delegated responsibility must be exercised personally by that employee unless further delegation has been approved by the director.

10. The "rule of three" has now been replaced by a "rule of five." Under current procedures the agency may select from the top five eligibles. PR 5 02.2. PSEA and Kaiser do not challenge the "rule of five."

11. Under the current "rule of five" there may be four eligibles marked NS.

12. SOP 05–83–005 provides:

The question of whether delegation of the power to determine availability is contrary to the merit principle as established in the Personnel Act is one of statutory interpretation. Generally, statutory authority permitting delegation of agency functions and duties supports this type of delegation. 1 N. Singer, *Sutherland Statutory Construction* § 4.14, at 155–56 (4th ed. 1985) (hereinafter *Sutherland*). *See generally,* 2 Am.Jur.2d *Administrative Law* § 221, at 50–51 (1962). Under certain circumstances, however, the subdelegation of power may be beyond the scope of authority of an administrative agency. 2 Am. Jur.2d *Administrative Law* § 221, at 25 (Supp.1985); *see also Warren v. Marion County,* 222 Or. 307, 353 P.2d 257, 264 (1960); 1 K. Davis, *Administrative Law Treatise* §§ 9.06, 9.07, at 634–40 (1958) (hereinafter Davis). Authorities discussing

Names are not removed from the eligible list because the applicant has been "passed over" or not considered. Reasons that may be used to inactivate a name from the eligible list are given below. When any of these reasons are given there must be documentation on file. This documentation may be required by the Division of Personnel to remove an eligible from a list.

1. The candidate on the Certification cannot be contacted because he/she has failed to inform the Division of Personnel of a change in the address. Code WA (Personnel Rule 4 04.8)
2. A candidate has been already appointed to a permanent/probationary position in the same job class. Code EM (Personnel Rule 4 04.1). Candidates appointed to a nonpermanent position will be removed only from the nonpermanent list; they will remain on eligible lists for permanent position (Personnel Rule 4 04.-11).
3. A candidate who has been considered, but not selected (NS), for three separate positions in the same job class within the same Department will not, at the written request of the appointing authority, be again certified by that Department (Personnel Rule 5 03.24). A candidate rejected by two Departments under this Rule will be completely removed from the eligible list (Personnel Rule 4 04.10). To be "considered" a candidate must be within the top ranks available and an appointment from that list must have been made. When unique or unusual circumstances are recorded under Personnel Rule 5 02.4, a candidate must be in the top five ranks available or at a rank equal or higher than the candidate selected in order to be "considered."
4. It is discovered that the candidate does not meet the minimum qualifications for the job class (Personnel Rule 3 02.32). If an appointing authority doubts the qualifications of a candidate this information should be brought to the attention of the Division of Personnel immediately.
5. If an unsatisfactory reference or conviction record is discovered during the departmental screening of a candidate, this *may* be grounds for removal from the eligible list. Reasons, recency and relationships to the position will be considered in each request. Use code NR—Not Recommended. (Personnel Rule 4 04.9) See Personnel Memorandum 61–4 regarding this action code.
6. "Is so disabled as to be rendered unfit for the performance of the duties required." Careful consideration should be used before giving this as a reason. A physician's statement, or positive indication that the eligible agrees may be submitted as documentation. Code NR (Personnel Rule 3 02.33). If the requirements are unique to the position, but not common to the class, the eligible will not be removed.
7. "Is addicted to the use of narcotics or the excessive use of intoxicating liquors." (Code NR) A record of arrests and convictions will be required for documentation purposes. The appointing authority should also consider recency of the problem and treatment or therapy the candidate has received or is receiving and the progress of the treatment. Consideration should be given to eligibles who have been rehabilitated or are satisfactorily progressing with rehabilitation treatment. (Personnel Rule 3 02.34)
8. A candidate who fails to respond to a written or telegraphed inquiry within the appropriate time limit will be removed. Personnel Action code FR (Personnel Rules 4 04.3 and 4 04.4) A candidate who responds after the time limit, but before the Certification is returned to the Division of Personnel should have that comment added so that he/she is not removed.
9. A candidate who declines appointment to the job class will be removed. Personnel Action code DA (Personnel Rule 4 04.5).
10. A candidate already employed in the same or higher pay range with the State in probationary or permanent status. Personnel Action code EM (Personnel Rule 4 04.2).
11. A candidate who accepts a position, but fails to report for duty. Personnel Action code DR (Personnel Rule 4 04.6).
12. A candidate who has stated she/he is not available for employment at the current time is removed (code NA).
13. A candidate who did not appear for a scheduled interview (code DI) is considered not available, and will be removed.

PR 4 04.9 and 4 05.0 are now codified at 2 AAC 07.120, .125, .130 and provides for substantially the same thirteen reasons for removal from availability.

the appropriate subdelegation of agency authority generally analyze the delegation by agency heads to subordinates and delegation of a degree of authority. *See* Davis, *supra,* § 9.07, at 639. Nevertheless, the general rule governing subdelegations is whether "it is reasonable to believe the legislature intended a particular function to be performed by designated persons because of their special qualifications." *Sutherland, supra,* § 414, at 155–56. If the legislature intended a function to be performed only by limited persons, a subdelegation is invalid. *Id.* at 156. We believe that by enacting AS 39.25.150(23), which expressly permits the Director to delegate personnel duties to the principal departments of the executive branch, the Legislature has indicated an intent not to vest personnel responsibilities exclusively in the Director due to his special qualifications. Thus the subdelegation here is not contrary to the statutory authority of the Act.

## IV. CONCLUSION

The remaining points raised by appellants are without merit. The judgment, therefore, is AFFIRMED.