El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
El Departamento de Estado nos solicita que revoquemos una resolución del Tribunal de Apelaciones que confirmó las determinaciones sobre unidad apropiada que hizo la Comisión de Relaciones del Trabajo (Comisión) para la sin-dicalización de los empleados del Departamento de Estado. La Comisión incluyó ciertos empleados cuya exclusión ha-bía sido solicitada por los fundamentos de confidencialidad y supervisión en la única unidad apropiada aprobada para la antes mencionada dependencia pública. El Departa-mento de Estado sostiene que la inclusión se debió a una interpretación restrictiva de los conceptos “empleado con-fidencial” y “supervisor”.
La controversia planteada nos brinda la oportunidad de delimitar las definiciones de “empleado confidencial” y “su *99 pervisor” contenidas en la Ley Núm. 45 de 25 de febrero de 1998, Ley de Relaciones del Trabajo para el Servicio Pú-blico de Puerto Rico (Ley para el Servicio Público), 3 L.P.R.A. see. 1451 et seq. Resolvemos que la definición de “supervisor” se extiende a aquellos empleados quienes al ejercer su discreción tienen autoridad para hacer recomen-daciones sobre la imposición de medidas disciplinarias o que tienen la responsabilidad de asignar o dirigir el tra-bajo de forma habitual y no incidental. En cuanto al con-cepto “empleado confidencial”, resolvemos que la Comisión no debe limitar su interpretación a la definición desarro-llada en el contexto de la Ley Núm. 130 de 8 de mayo de 1945, Ley de Relaciones del Trabajo de Puerto Rico (Ley de Relaciones del Trabajo), 29 L.P.R.A. sec. 61 et seq., que, a su vez, limita su aplicación a empleados vinculados a la política laboral de la agencia. Por el contrario, entendemos que la definición debe incluir además a aquellos empleados cuya función tiene un efecto significativo en la formulación e implantación de la política pública general de la agencia o que mantienen una relación de confidencialidad con los que la formulan o implantan.
I
El 9 de septiembre de 2003, la Unión General de Traba-jadores (UGT), División de Empleados Públicos, presentó una Petición de Representación ante la Comisión en la que solicitó una elección para escoger al representante exclu-sivo de todos los empleados de carrera del Departamento de Estado. La Comisión celebró una Sesión Especial para la determinación de Unidades Apropiadas, en la cual estu-vieron representados, tanto el Departamento de Estado como la UGT. A solicitud de la Comisión, el Departamento de Estado presentó unas descripciones de puestos y un or-ganigrama de algunas de las Secretarías del Departa-mento de Estado. Por su parte, la UGT sometió un memo *100 rial con las clases y los puestos en controversia y la composición de las unidades apropiadas. Eventualmente las partes llegaron a un acuerdo para incluir veintiocho clases en la unidad apropiada y dejar fuera treinta y cuatro. Sin embargo, existía controversia sobre la inclusión de veintidós clases adicionales.(1)
Posteriormente, la Comisión emitió su determinación sobre Unidades Apropiadas. En la misma, aprobó una sola unidad apropiada en el Departamento de Estado —lla-mada “Unidad A”— para todo el personal elegible. Para determinar su composición, la Comisión acogió el acuerdo entre las partes sobre sesenta y dos puestos, y resolvió la controversia. sobre los puestos para los que no existía acuerdo.
Luego que la Comisión hiciera su determinación sobre la Unidad Apropiada, el Departamento de Estado presentó un Escrito Presentando Excepciones a la Composición de la Unidad Apropiada, conforme a la Sec. 309(h) del Regla-mento de dicha entidad. En su escrito, el Departamento de Estado solicitó que se excluyeran varios puestos de la Uni-dad Apropiada por los fundamentos de confidencialidad y supervisión. No obstante, la Comisión confirmó el dicta-men emitido previamente y ordenó la celebración de elecciones.
Tras la determinación de la Comisión, el Departamento de Estado solicitó una revisión ante el Tribunal de Apelaciones. En esencia, cuestionó la interpretación res-trictiva del concepto “empleado confidencial” que hizo la *101 Comisión, así como la inclusión en la Unidad Apropiada de ciertos empleados que a su entender ejercen funciones de supervisión. El Tribunal de Apelaciones confirmó la deter-minación de la Comisión basándose en el estándar de de-ferencia a las determinaciones administrativas. Además, pareció convalidar la utilización por analogía de la juris-prudencia desarrollada en el contexto de la Ley de Relacio-nes del Trabajo para dilucidar controversias relacionadas con la Ley para el Servicio Publico.
Inconforme con el dictamen, el Departamento de Estado acude ante nos mediante un recurso de certiorari. En su escrito presenta, básicamente, los mismos señalamientos de error esbozados ante el Tribunal de Apelaciones, cuestio-nando la interpretación restrictiva que hizo la Comisión de los conceptos “empleado confidencial” y “supervisor”. Exami-nado el recurso, acordamos expedir. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.
II
El 25 de febrero de 1998, la Asamblea Legislativa de Puerto Rico aprobó la Ley para el Servicio Público. Esta ley se aprobó con el propósito de conferir a los empleados públicos que no estén cubiertos por la Ley de Relaciones del Trabajo el derecho a organizarse para negociar sus condiciones de trabajo según los parámetros establécidos por la propia Ley para el Servicio Público. Estos parámetros se circunscriben a tres criterios esenciales, a saber: (1) acomodar, dentro de las realidades fiscales en que se desenvuelve el Gobierno, el costo correspondiente para mejorar las condiciones de trabajo de los empleados públicos; (2) evitar interrupciones en los servicios que prestan las agencias gubernamentales, y (3) promover la productividad en el servicio público. Véase Exposición de Motivos de la Ley Núm. 45, supra, 1998 Leyes de Puerto Rico 148. Véase, además, Asociación Maestros v. Comisión, 159 D.P.R. 81, 89 (2003).
*102 A esos fines, la Ley para el Servicio Público reconoció a los empleados de las agencias centrales tradicionales el derecho a organizarse y afiliarse en organizaciones sindicales de su elección. Art. 4 de la Ley para el Servicio Público, supra, 3 L.P.R.A. sec. 1451b. Así, pues, los empleados de las diferentes unidades apropiadas que desean sindicalizarse deben escoger, mediante un voto mayoritario, la organización que los representará ante la agencia correspondiente.
La organización sindical que resulte vencedora y que sea certificada como representante exclusiva de los em-pleados de esa unidad apropiada tendrá autoridad para negociar con la agencia correspondiente un convenio colec-tivo en el que se discutan y acuerden, entre otras cosas, asuntos relacionados con salarios y beneficios marginales, así como términos y condiciones de empleo. 3 L.P.R.A. see. 1451j. Véase Asociación Maestros v. Comisión, supra.
Para hacer cumplir las disposiciones de la Ley para el Servicio Público, la propia ley dispuso que se creara un organismo administrativo denominado “Comisión de Relaciones del Trabajo del Servicio Público”, a quien confirió poderes y facultades cuasilegislativas y cuasijudiciales delimitadas por la ley. 3 L.P.R.A. sec. 1452t. Entre las facultades delegadas se encuentra el deber y la obligación ministerial de interpretar, aplicar y hacer cumplir las disposiciones de dicha ley en todo lo relativo a los procesos de organización, certificación, descertificación de organizaciones sindicales; en los procedimientos relacionados con la conciliación y arbitraje de negociaciones de convenios colectivos; en los procedimientos relacionados con prácticas ilícitas, y en todos aquellos aspectos que este capítulo le delegue alguna actuación particular. Véase Asociación Maestros v. Comisión, supra, pág. 90.
Entre los aspectos que la ley delega a la Comisión se encuentra determinar las unidades apropiadas que existi-rán en las agencias, en consideración a unos criterios espe- *103 cúficos enumerados en la propia Ley para el Servicio Público. Los criterios son los siguientes:
(a) Comunidad de intereses entre los empleados.
(b) Evitar el fraccionamiento excesivo de las unidades.
(c) Patrones actuales de organización formal e informal de los empleados.
(d) Protección del pleno disfrute de los derechos reconocidos en la ley.
(e) Viabilidad de las negociaciones.
(f) Similitud funcional en requerimiento o condiciones del trabajo.
(g) Sistema de personal establecido y planes de clasificación y retribución implantados en la agencia.
(h) Acuerdo entre las partes.
Por su parte, la See. 4.2 de la Ley para el Servicio Pú-blico, supra, 3 L.P.R.A. sec. 1451d, establece quiénes son los empleados que deben quedar excluidos de todas las uni-dades apropiadas certificadas por la Comisión para la ne-gociación colectiva. La mencionada disposición indica que quedarán excluidos, entre otros:
(1) Empleados con nombramientos de confianza, transito-rios, irregulares, por jornal y empleados confidenciales.
(3) Los supervisores de todas las agencias, según este tér-mino ha sido definido en este capítulo. 3 L.P.R.A. sec. 1451d
La controversia que nos ocupa requiere, precisamente, delimitar el alcance de algunos conceptos incluidos en la disposición transcrita, a saber, el concepto “empleado con-fidencial” y “supervisor”.
III
A. Con respecto al concepto “supervisor”, la Comisión sostuvo que éste se extiende a aquellos empleados cuya función de supervisión es recurrente o habitual y está cla-ramente delegada. Por lo tanto, decidió incluir en la uni- *104 dad apropiada las clases que meramente colaboran de forma incidental en la labores de supervisión.
En su determinación de unidad apropiada, la Comisión se negó a excluir tres clases cuya exclusión había sido so-licitada por el Departamento de Estado bajo dicho concepto. La Comisión entendió que la alegada supervisión ejercida era de carácter incidental, accesoria y carente de autoridad y responsabilidad primaria. Al así decidir, se re-afirmó en resoluciones anteriores, las cuales habían re-suelto que la sustitución ocasional en las funciones de supervisor no tiene el efecto de privar al puesto de su derecho a la sindicalización, ausentes otras consideraciones.
El Departamento de Estado pidió la exclusión de la clase Contador Ejecutivo por motivo de supervisión y confidencialidád. Sin embargo, la Comisión no atendió el fundamento de confidencialidad y decidió incluirla en la unidad apropiada, basándose solamente en un análisis so-bre su carácter de supervisión. La posición del Departa-mento de Estado era que las funciones del Contador Ejecu-tivo son similares a la de un subdirector, toda vez que supervisa a los Auxiliares de Contabilidad y les asigna trabajo. No obstante, la Comisión determinó que la super-visión que pudiera ejercer el Contador Ejecutivo era en sustitución del Director de Finanzas. Al evaluar la Especi-ficación de Clase, la Comisión concluyó que de dichas espe-cificaciones no se deducía que la clase , tuviera autoridad y discreción sobre la imposición de medidas disciplinarias o la responsabilidad de asignarle trabajo habitualmente a empleados subalternos, por lo que decidió incluirla en la unidad apropiada.
De igual forma, la Comisión decidió incluir en la unidad apropiada las clases de Oficial de Compras II y Oficial Ejecutivo. En ambos casos concluyó que las supuestas la-bores de supervisión se limitaban a una colaboración no habitual con otro funcionario de mayor jerarquía que sí ejercía funciones de supervisión. En el primer caso, deter- *105 minó que el Oficial de Compras II meramente colaboraba en la supervisión ejercida por el Director de Compras. En cuanto a la clase de Oficial Ejecutivo, que incluye varios puestos, en todos la Comisión determinó que las tareas de supervisión no eran más que una colaboración no habitual.
No obstante, el Departamento de Estado objeta la inter-pretación del concepto “supervisor” que hace la Comisión. De acuerdo con su argumentación, el hecho de que un em-pleado sustituya de forma incidental a otro que ejerce fun-ciones de supervisión, hace al primero un supervisor para fines de la Ley para el Servicio Público. Sostiene que la clasificación de ion puesto es un concepto flexible y no es-tático, y que la Comisión ha incorporado requisitos que no corresponden al texto de la ley. No le asiste la razón.
La Ley para el Servicio Público define “supervisor” de la forma siguiente:
(dd) Cualquier empleado que, ejerciendo su discreción, tenga autoridad para hacer recomendaciones efectivas sobre la imposición de medidas disciplinarias; o que tenga la respon-sabilidad habitual de asignar o dirigir el trabajo, si tales res-ponsabilidades surgen de una ley, de un reglamento o de la descripción de deberes de su puesto, independientemente de que su nombramiento sea uno de carrera, confianza, transito-rio, probatorio, provisional, irregular, por jornal o por contrato. (Énfasis suplido.) 3 L.P.R.A: sec. 1451a(dd).
El propio texto de la ley nos permite identificar varios elementos esenciales de la definición de “supervisor.” En primer lugar, la ley es clara al extender la definición de “supervisor” a empleados que tienen discreción para reco-mendar acciones disciplinarias y responsabilidad habitual de asignar y dirigir el trabajo. Por otro lado, se colige que dichas responsabilidades deben surgir de la propia descrip-ción del puesto.
En reiteradas ocasiones hemos expresado que cuando la ley es clara y libre de ambigüedad se debe aplicar tal como la misma dispone, sin que pueda menospre- *106 ciarse válidamente su letra so pretexto de cumplir su espí-ritu o de alguna forma buscar la intención legislativa fuera del propio texto de la ley. Esto es así, ya que cuando el legislador se ha manifestado en lenguaje claro e inequí-voco, el texto de la ley es la expresión por excelencia de toda intención legislativa. Véanse: Romero Barceló v. E.L.A., 169 D.P.R. 460 (2006); Ortiz v. Municipio San Juan, 167 D.P.R. 609 (2006); Departamento Hacienda v. Telefónica, 164 D.P.R. 195 (2005).
Según ello, no podemos pasar por alto que el legislador dispuso expresamente y sin lugar a duda que el concepto “supervisor” se aplica a empleados que realizan la labor de supervisión de manera habitual y no ocasional o accidentalmente. A su vez, nada en el texto de la ley su-giere que le debamos dar otra interpretación. Por lo tanto, no tenemos duda de que, tal como resuelve la Comisión, al definir “supervisor” la ley se refiere a aquellos empleados que al ejercer su discreción tienen autoridad para hacer recomendaciones sobre la imposición de medidas discipli-narias o que tienen la responsabilidad de asignar o dirigir el trabajo de forma habitual y no incidental. Por tal razón, corresponde sostener la interpretación hecha por la Comi-sión con respecto al concepto “supervisor.”
B. Pasemos ahora a examinar el señalamiento del De-partamento de Estado en cuanto a la interpretación del concepto “empleado confidencial”. Al evaluar la solicitud del Departamento de Estado para la exclusión de varios puestos de la unidad apropiada por entender que eran “em-pleados confidenciales”, la Comisión decidió interpretar restrictivamente dicho concepto. En particular, limitó la definición de “conflicto de interés” al que hace referencia la ley, exclusivamente a conflicto de interés en el contexto de las relaciones obrero-patronales o de funciones al formular o implantar la política pública de la agencia. La Comisión hizo esta interpretación basándose en la jurisprudencia que ha desarrollado sobre dicho concepto la Junta de Reía- *107 dones del Trabajo y este Tribunal en el contexto de la Ley Núm. 130, supra, (Ley de Relaciones del Trabajo), que li-mita su aplicación a empleados vinculados a la política la-boral de la empresa. Erró la Comisión al así proceder.
La Ley de Relaciones del Trabajo concedió a los trabajadores de las agencias corporativas del Gobierno que se dediquen o puedan dedicarse en el futuro a negocios lucrativos o a actividades que tengan por objeto un beneficio pecuniario, el derecho a organizar sindicatos y a negociar colectivamente. Sin embargo, dicha ley no otorgó estos derechos a los empleados del gobierno central y de los municipios. Para atender la situación de estos últimos, se aprobó la ley cuya interpretación nos ocupa, es decir, la Ley para el Servicio Público. Véase Exposición de Motivos de la Ley Núm. 45, supra.
En cuanto a la determinación de unidades apropiadas, la Ley de Relaciones del Trabajo es sumamente parca. Al respecto, la ley sólo expresa que “la Junta decidirá en cada caso la unidad apropiada a los fines de la negociación colectiva”. 29 L.P.R.A. see. 66. Esto representa una mar-cada diferencia con la Ley para el Servicio Público, la cual establece unos criterios específicos que la Comisión debe considerar al determinar las unidades apropiadas.
Más aún, en cuanto a la exclusión del “empleado confidencial”, la Ley de Relaciones del Trabajo guarda total silencio. Esto es, dicha ley no contiene ninguna definición de lo que se considera un “empleado confidencial”. Es por esto que la definición de “empleado confidencial” —desarrollada por nuestra jurisprudencia en el contexto de la Ley de Relaciones del Trabajo— fue adoptada de la jurisdicción federal. A su vez, la jurisdicción federal adoptó la exclusión del “empleado confidencial” a base del desarrollo jurisprudencial de la Ley Taft-Hartley, 29 U.S.C. sees. 141-197. En lo pertinente, dicha doctrina ha establecido que “empleado confidencial” se refiere a aquel empleado que está relacionado con la información y con el conoci- *108 miento sobre las relaciones obrero-patronales y la negociación colectiva. Véanse: A.A.A. v. Unión Abo. A.A.A., 158 D.P.R. 273 (2002); Adm. de Terrenos v. U.I.E.A.T., 149 D.P.R. 65 (1999).
Ha sido la Junta de Relaciones del Trabajo, como agen-cia encargada de interpretar la Ley Núm. 130, supra, quien ha elaborado, la definición de “empleado confiden-cial” adoptada de la jurisdicción federal. En Fábrica de Muebles Dimas, Dec. de la J.R.T. Núm. 134 (1955), se dis-cutió la adopción en Puerto Rico de la definición de “em-pleado confidencial” desarrollada en la jurisdicción federal en el contexto de la Ley Taft-Hartley. La definición adop-tada originalmente ha sido ampliada para incluir aquellos empleados que, si bien no son ejecutivos ni supervisores, atienden asuntos confidenciales relativos a la política obre-ro-patronal, o están en una relación confidencial con las personas que formulan o establecen las normas, directrices o la política laboral de una empresa, o que tiene acceso o conocimiento de ésta. Además, se han incluido empleados que, aun cuando no asisten al personal que realiza funcio-nes empresariales, sí tienen acceso a información confiden-cial relacionada con posibles cambios que pueden resultar de las negociaciones colectivas. Véase Autoridad de Energía Eléctrica, Dec. de la J.R.T. PC-73 (1984).
Según las marcadas diferencias entre ambas leyes, consideramos que resultaría inadecuado aplicar indistintamente la definición de “empleado confidencial” de la Ley de Relaciones del Trabajo a controversias relacionadas con la Ley para el Servicio Público. La definición de “empleado confidencial” que hemos adoptado en el contexto de la Ley de Relaciones del Trabajo, tal como hemos mencionado, proviene de la doctrina desarrollada en Estados Uni-dos con relación a la Ley Taft-Hartley. Esta legislación federal gobierna las relaciones obrero-patronales en el sector privado. De igual forma, la Ley de Relaciones del Trabajo *109 cubre a empleados de la empresa privada y de las corpora-ciones públicas de Puerto Rico. Por su parte, la Ley para el Servicio Público fue creada particularmente para los em-pleados del gobierno central y de los municipios, quienes no están cubiertos por la Ley de Relaciones del Trabajo.
De hecho, nuestro legislador, al reconocer que el Gobierno es un patrono particular, quiso legislar una ley separada de la Ley de Relaciones del Trabajo para otorgar el derecho a la negociación colectiva a los empleados del gobierno central. Precisamente, para atender esas particularidades del Gobierno como patrono, la Ley para el Servicio Público difiere marcadamente de la Ley de Relaciones del Trabajo en varios aspectos importantes que conviene resaltar.
En primer lugar, mientras que la Ley de Relaciones del Trabajo es parca en cuanto a las determinaciones de uni-dades apropiadas, limitándose a decir que la Junta de Re-laciones del Trabajo hará tal determinación, la Ley para el Servicio Público establece unos criterios específicos que de-ben servir de guía a la Comisión al hacer la determinación de unidad apropiada. Por otro lado, en lo concerniente al asunto particular del concepto “empleado confidencial”, la Ley de Relaciones del Trabajo no lo define. Sin embargo, la Ley para el Servicio Público contiene una definición que no podemos ignorar.
La Ley para el Servicio Público define “empleado confi-dencial” como toda persona que tuviera conflicto de intere-ses o que participe significativamente en la formulación e implantación de política pública o que realice labores direc-tas o indirectas relacionadas con las relaciones obrero-patronales. 3 L.P.R.A. sec. 1451a(p). Es decir, y según ha expresado la propia Comisión, se consideran empleados confidenciales aquellos empleados que cumplen con alguno de los tres criterios enumerados por la ley. Es decir, em-pleados que:
*110 (1) tuvieran conflicto de intereses;
(2) participen significativamente en la formulación e implantación de política pública, y
(3) realicen labores directas o indirectas en torno a las relaciones obrero-patronales. 3 L.P.R.A. sec. 1451a(p).
Como vemos, la Ley para el Servicio Público no limita su definición de “empleado confidencial” a los asuntos relacio-nados con la política laboral de la empresa. En particular, los primeros dos criterios —conflicto de intereses y formu-lación e implantación de política pública— no hacen men-ción de la política laboral. Por ende, el concepto “empleado confidencial” en el contexto de la Ley para el Servicio Pú-blico no se puede limitarse a lo concerniente a las relacio-nes obrero-patronales.
Un tribunal no está autorizado, bajo el pretexto de buscar la intención legislativa en un estatuto, a añadirle limitaciones o restricciones que no surgen de su texto. Cancio, Ex parte, 161 D.P.R. 479 (2004); Martínez v. Rodríguez, 160 D.P.R. 145 (2003); Com. Pro Perm. Bda. Morales v. Alcalde, 158 D.P.R. 195 (2002). Tampoco un tribunal puede eliminar mediante legislación judicial cualquier parte de una ley, no importa cuál pueda ser la opinión del tribunal respecto a su conveniencia. Guzmán v. Calderón, 164 D.P.R. 220 (2005); Oliver v. C.E.E., 162 D.P.R. 387 (2004); Parilla v. Loíza Sugar Co., 49 D.P.R. 597, 600 (1935).
Conforme a dichos principios, no podemos ignorar la de-finición de “empleado confidencial” que incluye el texto de la Ley para el Servicio Público y utilizar la definición que para la Ley de Relaciones del Trabajo hemos adoptado de la Ley Taft-Hartley. De un análisis del historial legislativo resulta evidente que el legislador quiso evitar cualquier referencia a la Ley Taft-Hartley en el contexto de la Ley para el Servicio Público. La Exposición de Motivos del pro-yecto original (P. del S. 1000) presentado durante la 12ma Asamblea Legislativa para otorgar el derecho a la sindica- *111 lización a los empleados del sector público no cubiertos por la Ley de Relaciones del Trabajo, y que inspiró la nueva Ley para el Servicio Público, hacía mención de la Ley Taft-Hartley de 1947.(2) Sin embargo, la Asamblea Legislativa eliminó del texto del P. del S. 813 —que finalmente se con-virtió en la Ley para el Servicio Público— toda referencia a la mencionada legislación federal. De hecho, la Exposición de Motivos del P. del S. 813 y la propia Ley para el Servicio Público es casi idéntica a la Exposición de Motivos del P. del S. 1000, con la excepción de que se eliminó toda refe-rencia a la Ley Taft-Hartley.
La diferencia entre ambas leyes ha sido reconocida, tanto por la propia Comisión mediante sus resoluciones como por este Tribunal. En Departamento de Educación y Sindical Asociación de Maestros de Puerto Rico et al., la Comisión expresó:
A diferencia de la Ley Taft-Hartley y la Ley [Núm.] 130 de 1945 donde los empleados confidenciales se excluyen por razo-nes jurisprudenciales y donde la Ley no define qué se consi-dera un empleado confidencial, nuestra Ley específicamente excluye estos empleados y define en qué consisten los mismos(3)
De igual forma, este Tribunal se ha expresado sobre las antes mencionadas diferencias entre la Ley de Relaciones del Trabajo y la Ley para el Servicio Público. Al determinar el carácter revisable de las determinaciones de unidad apropiada bajo la Ley para el Servicio Público, rechazamos aplicar por analogía la limitación que para dichas revisio-nes contiene la Ley de Relaciones del Trabajo. Sobre el particular sostuvimos:
*112 En vista de que la Ley Núm. 45, ante, no contiene una limita-ción análoga a la de la Ley de Relaciones del Trabajo de Puerto Rico en cuanto al ámbito de revisión judicial, establecimos que no procedía aplicarla, por analogía, a un caso efectuado ante la Comisión. (Énfasis en el original.) Depto. Educ. v. Sindicato Puertorriqueño, 168 D.P.R. 527, 542 (2006), citando a A.R.Pe. v. Coordinadora, 165 D.P.R. 850 (2005).
Además de reconocer las marcadas diferencias entre ambas leyes, este Tribunal ha reconocido el derecho de Puerto Rico. a desarrollar nuestra propia política pública en un sinnúmero de áreas del derecho laboral, como podrían ser aquellas cubiertas por la Ley para el Servicio Público. Al resolver que la See. 301 de la Ley Taffc-Hartley, 29 U.S.C.A. see. 185, ocupa el campo en cuanto a las pruebas de detección de sustancias controladas en la empresa privada, detallamos los pasos a seguir para determinar cuándo la ley estatal queda desplazada por la mencionada legislación federal. Véase Condado Plaza v. Asoc. Emp. Casinos P.R., 149 D.P.R. 347, 356 (1999). Sin duda, en áreas no ocupadas por la legislación federal, Puerto Rico puede desarrollar su propia política pública.(4)
Acerca de Condado Plaza v. Asoc. Emp. Casinos P.R., supra, se ha expresado:
El mayor significado de este caso son las implicaciones al poder de Puerto Rico sobre su propia política pública. Aunque las normas federales son obligatorias en la esfera ocupada por la Sección 301, en cuanto a la no ocupada Puerto Rico tiene pleno poder para desarrollar una política pública según su mejor juicio; por ejemplo, con respecto a las corporaciones pú-blicas y en la implantación de la nueva Ley de Relaciones del Trabajo para el Servicio Público aprobada en el 1998. (Énfasis suplido.(5)
*113 Según la intención legislativa al aprobar la Ley para el Servicio Público y los pronunciamientos de este Tribunal en Condado Plaza v. Asoc. Emp. P.R., supra, consideramos que la definición de “empleado confidencial” no puede estar basada en la definición desarrollada en la esfera federal en el contexto de la Ley Taft-Hartley.(6) Esta interpretación restrictiva tendría el efecto de dejar fuera de la definición a aquellas personas que participan significativamente en la formulación e implantación de la política pública general de la empresa, contrario al propio texto de la Ley para el Servicio Público.
Además, debemos señalar que la definición de “empleado confidencial” adoptada originalmente en el contexto de la Ley de Relaciones del Trabajo ha sido ampliada para incluir, no sólo a empleados que realizan tareas confidenciales relacionadas con .la política laboral de la agencia, sino también a aquellos que están en una relación confidencial con las personas que formulan o establecen las normas, directrices o la política laboral de una empresa, o que tienen acceso o conocimiento de ésta. Véase Autoridad de Energía Eléctrica, supra. Entendemos que, de ia misma forma, la definición de “empleado confidencial” bajo la Ley para el Servicio Público se debe extender a aquellos empleados que están en una relación de confidencialidad con los que formulan o implantan la política pública general de la agencia o que tienen acceso o conocimiento de ésta. Cree-mos que esta definición se ajusta adecuadamente al texto de la Ley para el Servicio Público y cumple a cabalidad con la intención legislativa de brindar a los empleados del gobierno central y de los municipios el derecho a la negocia- *114 ción colectiva dentro de unos parámetros que respondan a las particularidades del Gobierno como patrono.
Reconocemos que la Comisión, tanto en la determina-ción de unidad apropiada en controversia como en resolu-ciones anteriores, ha intentado elaborar una definición que incluya a ciertos empleados que, si bien no participan directamente en la formulación o implantación de la política pública general de la empresa, mantienen una relación de confidencialidad con los que la formulan e implantan. Sin embargo, notamos que la Comisión no ha aplicado la norma uniformemente y en ocasiones su análisis demues-tra un apego innecesario a la doctrina desarrollada en el contexto de la Ley de Relaciones del Trabajo. Así se deduce de un análisis somero de algunos puestos, como los que se encuentran bajo la supervisión de la Secretaría Auxiliar de Relaciones Exteriores del Departamento de Estado.
Según el organigrama del Departamento de Estado, la misión principal de esta Secretaría Auxiliar es implantar la política pública de internacionalización de Puerto Rico. No obstante, en su determinación la Comisión decide ex-cluir varios de estos puestos y otros no. En particular, la Comisión se negó a excluir todos los puestos pertenecientes a la clase de Oficial de Asuntos Internacionales. La Comi-sión fundamentó su negativa a excluir esta clase alegando que sus tareas se limitan a coordinar eventos y actividades culturales y coordinar las estadías de funcionarios y no en lo relacionado a la implantación de política pública. Sin embargo, de las descripciones de los puestos se deduce que algunos de estos empleados redactan documentos oficiales que incluyen cartas, informes y recomendaciones para la firma del Secretario de Estado, Subsecretario de Estado y el Secretario Auxiliar. Además, participan en viajes oficia-les con funcionarios del Gobierno de Puerto Rico y en con-ferencias representando al negociado o al Secretario Auxi-liar, según éste determine y asigne.
*115 Tras analizar las descripciones de los puestos, concluimos que estos empleados están en una relación de confidencialidad con los que formulan o implantan la política pública general del Departamento de Estado o tienen acceso o conocimiento de ésta. Por lo tanto, resolvemos que erró la Comisión al no excluir esta clase.
Igual curso de acción se impone, por ejemplo, con el puesto de Contador Ejecutivo. Aunque la Comisión con-cluye correctamente que no se trata de un supervisor para fines de la Ley para el Servicio Público, lo cierto es que no atendió el planteamiento que hizo el Departamento de Es-tado sobre el alegado carácter confidencial de este puesto. Entre las tareas del Contador Ejecutivo están preparar los estados financieros de las diferentes asignaciones estata-les, colaborar con la División de Presupuesto en la formu-lación del presupuesto de la agencia, sustituir al Director de Finanzas en su ausencia y representarlo en las activi-dades cuando lo requiera. De igual forma, este funcionario prepara las obligaciones de fondos al cierre del año fiscal de las asignaciones estatales para los diferentes programas. Resolvemos que se trata de un empleado con-fidencial de acuerdo con la definición que se establece en la Ley para el Servicio Público, por lo que debió ser excluido de la unidad apropiada. Este análisis es una ilustración, por lo que no debe entenderse que se limita a las clases específicamente mencionadas. Por el contrario, la norma aquí establecida se debe aplicar a todos los puestos en controversia.
Por último, es importante señalar que hasta este momento, al interpretar la Ley para el Servicio Público, hemos seguido las interpretaciones y decisiones de la Junta de Relaciones del Trabajo, entidad creada conforme a la Ley de Relaciones del Trabajo. No obstante, fue la Comisión de Relaciones del Trabajo la agencia creada por ley para implantar e interpretar la Ley para el Servicio Público. Consideramos que si bien la Comisión puede usar *116 como guía o referencia las interpretaciones de la Junta de Relaciones del Trabajo sobre la Ley de Relaciones del Tra-bajo, debemos reconocer que se trata de leyes distintas, dirigidas a patronos y empleados distintos, por lo que exis-ten ciertas áreas donde, al interpretar la Ley para el Ser-vicio Público, la Comisión debe desarrollar su propia inter-pretación sin necesidad de sujetarse absolutamente a las interpretaciones que la Junta de Relaciones del Trabajo ha hecho de su propia ley.
IV
Por los fundamentos que anteceden, procede confirmar en parte la sentencia del Tribunal de Apelaciones, Región de San Juan, a los efectos de sostener la interpretación del concepto “supervisor” hecha por la Comisión y revocar en parte en cuanto a la interpretación de “empleado confi-dencial”. Se devuelve el caso para que la Comisión evalúe nuevamente los puestos impugnados conforme a la defini-ción de “empleado confidencial” esbozada en esta opinión.

Se dictará sentencia de conformidad.

 Las clases en controversia eran las siguientes: Administrador(a).de Sistemas de Oficina I, Administrador(a) de Sistema de Oficina II, Analista de Presupuesto, Analista en Fiscalización de Ingresos, Analista en Tecnología Cibernética, Asistente en Administración de Sistemas de Oficina III, Asistente en Recursos Humanos, Con-ductora) de Vehículos, Contador(a) Ejecutivo (a), Encargado (a) de Servicios Gastro-nómicos, Especialista en Asuntos Internacionales, Oficial Administrativo (a), Oficial de Asuntos Internacionales, Oficial de Compras II, Oficial de Comunicaciones y Prensa, Oficial de Juntas Examinadoras, Oficial de Preintervenciones, Oficial de Protocolo, Oficial de Recaudaciones, Oficial Ejecutivo, Oficial en Administración de Recursos Humanos y Traductor(a).

 Este proyecto no fue aprobado en la 12ma Asamblea Legislativa y fue pre-sentado nuevamente en la 13ra Asamblea Legislativa como el P. del S. 813, que eventualmente fue aprobado y se convirtió en la Ley Núm. 45 de 25 de febrero de 1998 (3 L.P.R.A. see. 1451 et seq.), conocida como la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico.

 Departamento de Educación y Sindical Asociación de Maestros de Puerto Rico et al., DD-99-001, 26 de marzo de 1999.

 Este Tribunal ha expresado que lo importante para saber si alguna ley esta-tal se encuentra desplazada por la Sec. 301 de la Ley Taft-Hartley es determinar si para resolver la acción que surge de la ley estatal es necesario interpretar el conve-nio colectivo. Condado Plaza v. Asoc. Emp. Casinos P.R., 149 D.P.R. 347, 358 (1999), citando a Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988).

 D.M. Helfeld, Derecho Laboral, 70 (Núm. 2) Rev. Jur. U.P.R. 447, 452 (2001).

 De hecho, al revisar otra legislación sobre sindicalización de empleados pú-blicos aprobada en varios estados, hemos notado que al definir “empleado confiden-cial”, no todos los estados han seguido el lenguaje de la Ley Taft-Hartley de la juris-dicción federal. Hemos encontrado un lenguaje distinto al lenguaje de esta ley en la legislación de estados tales como Nuevo México, N.M. Stat. Ann. Sec. 10-7E-4 (2007); New Hampshire, RSA-273-A-.1 (2007); California, Cal Gov. Code Sec. 3513 (2007); Massachusetts, ALM GL Ch. 150E, Sec. 1, y Florida, Fla. Stat. Sec. 447.203 (2007).