EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Omar Ortiz López y Otros <br><br> Recurridos <br><br> v. <br><br> Municipio de San Juan <br><br> Peticionario | Certiorari <br><br> 2006 TSPR 64 <br><br> 167 DPR \_\_\_\_ |

Número del Caso: CC-2003-580

Fecha: 20 de abril de 2006

Tribunal de Apelaciones:

                    Circuito Regional I San Juan, Panel II

Juez Ponente:

                    Hon. Dolores Rodríguez de Oronoz


Abogado de la Parte Recurrida:

                    Lcdo. Luis Antonio Pabón Rojas

Abogados de la Parte Peticionaria

                    Lcda. Haifa M. Notario Toll
                    Lcdo. Pedro de Jesús Román
                    Lcdo. Jorge R. Quintana Lajara


Materia: Revisión Administrativa


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Omar Ortiz López y Otros

    Recurridos

       v.                    CC-2003-580     Certiorari

Municipio de San Juan

    Peticionario

Opinión del Tribunal emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 20 de abril de 2006.

Tenemos la ocasión para determinar si el Alcalde del Municipio de San Juan, Hon. Jorge Santini Padilla, podía delegar al Comisionado de la Policía Municipal la facultad de sancionar a los policías municipales que cometieran faltas clasificadas como graves en el reglamento que rige la conducta de estos últimos. Veamos.

I

El Comisionado de la Policía Municipal y Seguridad Pública de San Juan, Sr. Adalberto Mercado Cuevas (en adelante, el Comisionado), sancionó a trece policías municipales por alegadamente incurrir en faltas graves, según

éstas se describen en el Reglamento de la Policía Municipal de San Juan.[1] Las sanciones impuestas a estos agentes comprendían desde la suspensión de empleo y sueldo por varios días hasta la expulsión del cuerpo policíaco. Inconformes, estos trece policías presentaron sus respectivas apelaciones ante la Comisión de Investigación, Procesamiento y Apelación (en adelante, CIPA).

Celebrada la vista administrativa, la CIPA revocó las aludidas acciones disciplinarias. Concluyó que la facultad para sancionar a los policías municipales por la comisión de faltas graves correspondía al Alcalde como autoridad nominadora, conforme se desprende de la Ley de la Policía Municipal, según enmendada. 21 L.P.R.A. secs. 1061 *et seq*. Entendió, por ello, que el Alcalde no tenía autoridad en ley para subdelegar dicho poder al Comisionado.

Luego de que la CIPA decidiera no reconsiderar su dictamen, el Municipio de San Juan (en adelante, el Municipio) acudió al antiguo Tribunal de Circuito de Apelaciones. En esencia, argumentó que el Alcalde había delegado válidamente al Comisionado el poder para tomar acciones disciplinarias contra los policías municipales, al amparo de la Ley de Municipios Autónomos del Estado

---

[1] Reglamento adoptado en virtud de la Ordenanza Municipal Núm. 58, Serie 1999-2000, de 24 de abril de 2000 (en adelante, el Reglamento).

Libre Asociado,[2] la cual goza de supremacía ante la Ley de la Policía Municipal. Sostuvo, además, que la validez de dicha delegación está apoyada por un claro mandato legislativo. Tras consolidar todos los recursos de revisión presentados por el Municipio, el foro apelativo intermedio confirmó la resolución recurrida.

Insatisfecho, el Municipio presenta ante nosotros el recurso de epígrafe. En éste reitera que el Alcalde podía subdelegar la facultad para sancionar a los policías municipales, lo que en efecto hizo en la figura del Comisionado mediante la Orden Ejecutiva Núm. JS-012 del 13 de febrero de 2001. Aduce, además, que al revocar sus acciones disciplinarias, la CIPA invalidó la Ordenanza Municipal Núm. 58, Serie 1999-2000, del 24 de abril de 2000, en la cual se adoptó el Reglamento, y la referida Orden Ejecutiva, sin tener autoridad en ley para ello. Vista la petición del Municipio, acordamos expedir. Las partes han comparecido por lo que procedemos a resolver.

II

Debemos abordar la controversia de autos teniendo como norte el hecho de que los municipios son entidades jurídicas creadas por la Asamblea Legislativa y, debido a ello, poseen solamente los poderes expresamente delegados por el legislador, en la forma y manera que les fueron encomendados. *First Bank de P.R. v. Mun. de Aguadilla,*

---

[2] Ley Núm. 81 de 30 de agosto de 1991, según enmendada. 21 L.P.R.A. secs. 4001 *et seq.*

153 D.P.R. 198 (2001); Art. VI, Sec. 1., Const. E.L.A., 1 L.P.R.A. El municipio, como entidad gubernamental, no es soberano por sí mismo. *Colón v. Mun. de Guayama*, 114 D.P.R. 193 (1983); *McQuillin Mun Corp* sec. 2.08.10 (3ra ed). Corresponde a la Asamblea Legislativa, por ende, determinar lo relativo a su organización y funcionamiento. *Id.*; *Aut. de Puertos v. Mun. de San Juan*, 123 D.P.R. 496, 503 n. 1 (1989). Conforme a lo anterior, debemos prestar particular atención a la intención del legislador cuando ha decidido configurar esquemas administrativos u operacionales para guiar alguna faceta de la actividad municipal. Veamos en este caso cuál fue esa intención.

A

Con el propósito de crear un cuerpo policíaco a nivel municipal, que colaborara con la Policía Estatal en la vigilancia y la protección de la vida y la propiedad en la demarcación del municipio, la Asamblea Legislativa aprobó la Ley Núm. 19 de 12 de mayo de 1977, denominada como la Ley de la Guardia Municipal (en adelante, Ley Núm. 19). 21 L.P.R.A. secs. 1061 *et seq.* Mediante esta pieza legislativa se autorizó a los municipios a establecer el referido cuerpo de vigilancia y se dispuso sobre todo lo relativo a su organización, funcionamiento, dirección y administración.

Según la sección 4 de la Ley Núm. 19, la autoridad superior en cuanto a la dirección de la Guardia Municipal

recaía en el Alcalde. Sin embargo, la dirección inmediata y la supervisión de este organismo estarían a cargo de un Comisionado nombrado por el primer ejecutivo del municipio, con el consejo y consentimiento de la Asamblea Municipal. El Alcalde, igualmente, sería responsable de determinar mediante reglamento lo concerniente a la conducta de los miembros de la Guardia, así como aquellas faltas que conllevarían alguna acción disciplinaria. Estas faltas, a su vez, serían clasificadas como leves o graves y aparejarían sanciones o penalidades previamente determinadas por el Alcalde y aprobadas por la Asamblea Municipal. Ley Núm. 19, *supra*, secs. 5 y 8.

La Ley Núm. 19 también dispuso un procedimiento específico para dirimir las conductas constitutivas de faltas graves. En lo aquí pertinente, la sección 10 de esta ley estableció que:

> (a) En toda acción disciplinaria por faltas graves, el Comisionado preparará un informe completo en torno a las imputaciones hechas contra el miembro o miembros de la Guardia querellado.

> (b) **El Comisionado, luego de examinar y analizar el expediente y de dar al querellado la oportunidad de ser oído, resolverá el caso, absolviendo al querellado o imponiendo el castigo que estime razonable**, según lo dispone el inciso (d) de esta sección. Si se declara culpable el miembro o los miembros de la Guardia concernidos, así lo harán constar por escrito bajo su firma. El Comisionado entregará copia al querellado del documento contentivo de la decisión del querellado, lo que se comprobará por medio de la firma de éste e indicando la fecha y la hora de la decisión. El procedimiento para estos casos se determinará mediante reglamento.

(c) Los cargos por faltas graves serán formulados por escrito y firmados por el Comisionado entregando copia de éstos al miembro del Cuerpo a quien corresponda.

(d) [...]

(e) El Comisionado tendrá facultad para suspender temporalmente, de empleo y sueldo, a cualquier miembro de la Guardia mientras se practica cualquier investigación que se ordene relativa a incompetencia, mala conducta o crimen de que se acuse a dicho miembro de la Guardia. En tal caso, **el Comisionado** hará que se formulen los correspondientes cargos, sin demora innecesaria. **Investigará y resolverá tales casos a la mayor brevedad posible**, **imponiendo el castigo que estime razonable** dentro de los límites de esta ley y sus reglamentos o disponiendo la reinstalación al servicio de dicha persona con devolución de los sueldos devengados o sin ellos, durante el período de la suspensión, si a su juicio los hechos lo justificaren conforme lo dispuesto en el inciso (d) de esta sección.
[...]

(Énfasis nuestro.)

Ahora bien, el estado de derecho creado en virtud de la Ley Núm. 19 fue modificado mediante la aprobación de la Ley Núm. 45 de 22 de mayo de 1996 (en adelante, Ley Núm. 45). Esta última ley cumplió el propósito legislativo de otorgarle a la Guardia Municipal la misma autoridad y facultad --como agentes del orden público-- que tenía la Policía Estatal, siempre y cuando estos agentes municipales hubieran recibido el adiestramiento correspondiente y fueran certificados por el Superintendente de la Policía de Puerto Rico. Exposición de Motivos de la Ley Núm. 45, Leyes de Puerto Rico, 1996,

pág. 125. Dicho cuerpo de vigilancia, por consiguiente, pasó a ser la Policía Municipal.

No obstante, este último no fue el único fin perseguido por la Asamblea Legislativa a través de la aprobación de la Ley Núm. 45. Se desprende de su historial legislativo que dicho estatuto, además, establecería que:

> en toda acción disciplinaria por faltas graves ser[ía] el Alcalde el responsable de tomar desiciones [sic] para separar del cargo a cualquier miembro de la Guardia Municipal o aplicar y determinar todo lo relacionado a las sanciones que se le impongan a éste, a tenor con los informes, evaluaciones y recomendaciones que le someta el Comisionado de dicho Cuerpo. Informe de la Comisión de Asuntos Municipales de la Cámara de Representantes sobre el Sustitutivo al P. de la C. 268 de 5 de mayor de 1994, págs. 10-11.

Acorde con esta intención, mediante el Art. 10 de la Ley Núm. 45, el legislador enmendó el procedimiento para atender conductas constitutivas de faltas graves en la Policía Municipal, configurándolo de la siguiente manera:

> (a) En toda acción disciplinaria por faltas graves, **el Comisionado preparará un informe completo al Alcalde** en torno a las imputaciones hechas contra el miembro o miembros del Cuerpo.

> (b) **El Alcalde,** luego de examinar y analizar el expediente y de dar al querellado la oportunidad de ser oído, **resolverá el caso, absolviendo al querellado o imponiendo el castigo que estime razonable** según lo dispone el inciso (d) de esta Sección. Si se declara culpable el miembro o miembros del Cuerpo concernidos así lo harán constar por escrito bajo su firma. El Comisionado entregará copia al querellado del documento contentivo de la decisión, lo que se comprobará **por medio de la firma del Alcalde** e indicando la fecha y la hora de la decisión. El procedimiento

para estos casos se determinará mediante reglamento.

(c)[...]

(d)[...]

(e) El Comisionado, **con la autorización previa del Alcalde**, tendrá facultad para suspender temporalmente de empleo y sueldo a cualquier miembro del Cuerpo mientras se practica cualquier investigación que se ordene relativa a incompetencia, mala conducta o crimen de que se acuse a dicho miembro. En tal caso, el Comisionado hará que se formulen los correspondientes cargos sin demora innecesaria; **investigará e informará al Alcalde** tales casos a la mayor brevedad posible, **para que éste imponga el castigo que estime razonable** dentro de los límites de esta ley y sus reglamentos o disponiendo la reinstalación al servicio de dicha persona con devolución de los sueldos devengados o sin ellos, durante el período de la suspensión, si a su juicio los hechos lo justificaren conforme lo dispuesto en el inciso (d) de esta sección.
[...]

(Énfasis nuestro.)

B

Como sabemos, toda acción legislativa persigue un propósito, ya sea corregir un mal, alterar alguna situación existente, complementar una reglamentación vigente, crear una política pública o formular un plan de gobierno. R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed. rev., San Juan, Publicaciones JTS, 1987, Vol. 1, págs. 245-246. En atención a ello, las reglas de hermenéutica nos imponen el deber invariable de descubrir y hacer cumplir la verdadera intención y deseo del poder legislativo. *Dorante v. Wrangler de P.R.*, 145 D.P.R. 408

(1998). Este deber exige que el estatuto sea interpretado atribuyéndole un sentido que asegure el resultado que pretendió el legislador. *Vázquez v. A.R.P.E.*, 128 D.P.R. 513 (1991).

El ejercicio de interpretación estatutaria requiere que indaguemos la intención legislativa a través del análisis del historial legislativo de la ley, de su exposición de motivos, de los diversos informes de las comisiones de las Cámaras, o de los debates celebrados en el hemiciclo. *Vicenti Damiani v. Saldaña Acha*, res. el 16 de mayo de 2002, 2002 TSPR 66. No obstante, ante un lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de la intención legislativa. *Irizarry v. J & J Cons. Prods. Co., Inc.*, 150 D.P.R 155 (2000).

Asimismo, cuando el objeto de nuestra interpretación es una enmienda a la ley, debemos siempre tener en cuenta que no podemos imputarle a la Asamblea Legislativa la realización de un acto inútil al haberla aprobado. *Flamboyán Gardens v. Junta de Planificación*, 103 D.P.R. 884 (1975). En es sentido, debemos presumir que la intención de la Asamblea Legislativa fue cambiar el estatuto original para crear nuevos derechos o retirar algunos existentes. 1A Sutherland*, Statutes and Statutory Construction*, Sec. 22:30, págs. 357-358 (6ta ed. 2002). Es decir, podemos inferir con razonable certeza que el legislador estaba consciente de la interpretación de la

ley original y quiso limitar deliberadamente su alcance mediante la enmienda, máxime cuando esa redacción original no era ambigua. *Id.*, págs. 361-368.

Examinado este trasfondo legal, evaluemos los méritos del presente recurso.

III

Surge del expediente que, mediante la Ordenanza Núm. 58 del 24 de abril de 2000, Serie 1999-2000, el Gobierno Municipal de San Juan aprobó el Reglamento de la Policía Municipal, en virtud de los poderes conferidos por la Ley Núm. 19, según enmendada. La sección 16.1 del mencionado reglamento contiene las normas generales aplicables a las acciones disciplinarias, entre las cuales se dispone que el Alcalde o su representante autorizado tomaría las medidas correctivas correspondientes, en caso de que cualquier miembro del cuerpo policíaco incurriera en faltas leves o graves.

Así las cosas, el 13 de febrero de 2001, el Hon. Jorge Santini Padilla aprobó la Orden Ejecutiva Núm. JS-012, Serie 2000-2001, a través de la cual delegó al Comisionado de la Policía Municipal, Sr. Adalberto Mercado Cuevas, la facultad para imponer sanciones contra los miembros de la Policía Municipal de San Juan. Se desprende de la referida orden que dicha delegación de poder se efectuó al tenor de la Ley Núm. 19, según enmendada; de la sección 16.1 del Reglamento, y de los artículos 3.009(x) y 11.012 de la Ley de Municipios

Autónomos del Estado Libre Asociado de Puerto Rico, *supra*.

A base de esta delegación, el Comisionado impuso sanciones en el caso de autos contra trece policías municipales por la alegada comisión de faltas graves. Sin embargo, la CIPA, en atención a la apelación formulada por estos policías, dejó sin efecto estas medidas disciplinarias al concluir que el Alcalde no estaba autorizado a subdelegar la facultad de sancionar a los policías municipales cuando éstos incurrían en faltas clasificadas como graves. Estamos de acuerdo con el razonamiento de la agencia recurrida.

La claridad con que la Asamblea Legislativa se expresó mediante la aprobación de la Ley Núm. 45 no nos permite llegar a una conclusión contraria. Aunque originalmente el Comisionado de la Guardia Municipal era el responsable de imponer sanciones sobre los miembros del referido cuerpo por la comisión de faltas graves, la Ley Núm. 45 introdujo cambios significativos sobre este procedimiento disciplinario. Mediante este último estatuto, la Asamblea Legislativa hizo patente e inequívoca su intención de otorgar al Alcalde la responsabilidad de sancionar a los miembros de la Policía Municipal que incurrieran en faltas graves. De esta forma, privó al Comisionado de esta facultad que originalmente le había reconocido a través de la Ley Núm. 19. Además, impuso sobre el Comisionado la tarea de

investigar e informar al Alcalde los pormenores del caso para que este último tomara la decisión correspondiente. Por consiguiente, el Alcalde no podía subvertir esta intención legislativa y trasladar su facultad y responsabilidad al Comisionado, desvirtuando con ello el esquema diseñado deliberadamente por el legislador. El ordenamiento jurídico vigente al momento de la subdelegación se lo impedía.[3]

Somos de la opinión que la Asamblea Legislativa, mediante la aprobación de la Ley Núm. 45, tuvo la intención de atribuirle al Alcalde, de manera particular y como autoridad nominadora, la responsabilidad de decidir el destino de los policías municipales que incurrieran en faltas graves. A tal extremo, el Poder Legislativo enmendó la Ley Núm. 19 para configurar el ordenamiento jurídico conforme a dicha intención. Ante este hecho, la subdelegación que el Alcalde hizo al Comisionado sobre su facultad para sancionar a los

---

[3] Es menester señalar que, posteriormente, mediante la aprobación de la Ley Núm. 533 de 30 de septiembre de 2004, la Asamblea Legislativa enmendó la Sección 4 de la Ley Núm. 19 para que lea, en lo pertinente, así:

Sección 4.-Comisionado; facultades, atribuciones y deberes.

La autoridad superior en cuanto a la dirección de la Policía Municipal residirá en el Alcalde, pero la dirección inmediata y la supervisión del Cuerpo estará a cargo de un Comisionado que será nombrado por el Alcalde, con el consejo y consentimiento de la Legislatura Municipal. Para cumplir con lo establecido en esta Ley, el Alcalde podrá delegar en el Comisionado todas o algunas de las funciones aquí reservadas al primero [...] 21 L.P.R.A. sec. 1064.

policías municipales por faltas graves resultó inválida.
*Véanse*, 1 Sutherland, *op. cit.*, Sec. 4:15, pág. 210;
*Kaiser v. Sundberg*, 734 P. 2d 64 (1987).[4]

Tampoco nos convence el argumento del Municipio de que esta delegación de poder por parte del Alcalde estaba respaldada por los artículos 3.009(x) y 11.012 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico. En lo que nos concierne, el artículo 3.009(x) de la Ley de Municipios Autónomos establece:

> El alcalde será la máxima autoridad de la Rama Ejecutiva del gobierno municipal y en tal calidad le corresponderá su dirección, administración y la fiscalización del funcionamiento del municipio. El alcalde tendrá los deberes y ejercerá las funciones y facultades siguientes:
> [...]
> (x) Delegar por escrito en cualquier funcionario o empleado de la Rama Ejecutiva municipal las facultades, funciones y deberes que por **este subtítulo se le confieren**, excepto la facultad de aprobar, adoptar y promulgar reglas y reglamentos. (Énfasis nuestro.) 21 L.P.R.A. sec. 4109(x).

Además, el artículo 11.012 de la misma ley dispone en parte:

> Cuando la conducta de un empleado no se ajuste a las normas establecidas, la autoridad nominadora municipal impondrá la acción disciplinaria que corresponda. 21 L.P.R.A. sec. 4562.

Como podemos observar, el Municipio no toma en cuenta que los poderes, deberes y facultades que pueden

---

[4] Si podemos concluir razonablemente que la Asamblea Legislativa tuvo la intención de que una función particular fuera realizada por la persona designada en la ley debido a sus capacidades o cualidades especiales, la subdelegación de dicha función será inválida.

ser delegados en virtud del artículo 3.009(x) son los reconocidos en la propia Ley de Municipios Autónomos. Claro está, entre las facultades conferidas al Alcalde por el referido estatuto se encuentra la autoridad general de imponer acciones disciplinarias a los empleados del Municipio. No obstante, el esquema configurado por la Asamblea Legislativa para atender la indisciplina de los policías municipales no surge de esta última pieza legislativa, sino de la Ley Núm. 19, según ha sido enmendada. Conforme a ello, el Alcalde no podía ampararse en las disposiciones de la Ley de Municipios Autónomos para alterar el ordenamiento conformado particularmente por el legislador mediante la Ley Núm. 19, según enmendada, para dirimir las faltas graves de los policías municipales. Simplemente, el Municipio le atribuyó al citado artículo 3.009(x) un alcance que no surge del texto de la ley.

Por otra parte, el Municipio aduce que, al existir un conflicto entre la Ley de la Policía Municipal y la Ley de Municipios Autónomos, esta última debe prevalecer, por lo que el Alcalde estaba facultado para delegar la autoridad de sancionar a los policías municipales que incurrieran en faltas graves. El Municipio apoya su contención en el tercer párrafo del artículo 12.027 de la Ley de Municipios Autónomos, según originalmente fue redactada. El mencionado párrafo leía:

> En cuanto a las transacciones y asuntos de personal de los miembros de la Guardia Municipal continuarán aplicándose las disposiciones de la Ley Núm. 19 de 12 de mayo de 1977, según enmendada, conocida como "Ley de la Guardia Municipal", en todo lo que sea compatible con esta ley. Ley Núm. 81 de 30 de agosto de 1991, art. 12.027.

Sin embargo, no coincidimos con lo expuesto por el Municipio. En primer lugar, y como ya hemos indicado, el esquema administrativo diseñado para atender las faltas graves de la policía municipal fue provisto por la Ley Núm. 19, según enmendada. Dicho proceso disciplinario aplica con exclusividad a los miembros del cuerpo policíaco y no a los restantes empleados del Municipio. Estamos, pues, ante un ordenamiento jurídico particular que no fue suplido por la Ley de Municipios Autónomos. Por lo tanto, no procede concluir que exista un conflicto entre la Ley de la Policía Municipal y la Ley de Municipios Autónomos respecto a este asunto.

En segundo lugar, cuando la Asamblea Legislativa enmendó por primera vez la Ley de Municipios Autónomos mediante la Ley Núm. 84 de 29 de octubre de 1992, eliminó el citado párrafo del artículo 12.027. Fue luego de esta enmienda que la Asamblea Legislativa introdujo, a través de la Ley Núm. 45, el proceso disciplinario que aquí consideramos, atribuyéndole al Alcalde la facultad para imponer sanciones cuando algún policía municipal cometiera faltas graves. Ante tal actuación legislativa, no podemos concurrir con el planteamiento del Municipio.

Por último, nos corresponde pasar juicio sobre la alegación del Municipio de que la CIPA no tenía autoridad en ley para decidir como lo hizo, toda vez que con su dictamen invalidó la Ordenanza Núm. 58 del 24 de abril de 2000, Serie 1999-2000 y la Orden Ejecutiva Núm. JS-012, Serie 2000-2001. Arguye el Municipio que la única forma de suspender una ordenanza municipal o una orden ejecutiva del Alcalde es iniciando un procedimiento judicial ante el tribunal de instancia, conforme dispone el artículo 15.002(b) de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4702(b), trámite que no se realizó en este caso.

La CIPA es un organismo administrativo con facultades cuasijudiciales creado mediante la Ley Núm. 32 de 22 de mayo de 1972, 1 L.P.R.A. secs. 171 *et seq*, para entender en casos en que se le impute mal uso o abuso de autoridad a cualquier funcionario del orden público, agente de rentas internas o cualquier otro de la Rama Ejecutiva autorizado a realizar arrestos. *Ortiz Cruz v. Superintendente Policía*, 132 D.P.R. 432 (1993). Igualmente, posee jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos cubiertos por su ley, cuando el jefe o director del organismo o dependencia de que se trate les hubiera impuesto cualquier medida disciplinaria en relación con faltas graves, en el caso de miembros de la Policía o de

otras agencias que tengan reglamentación similar. 1 L.P.R.A. sec. 172(2).

No está en controversia que la CIPA tenía jurisdicción para revisar las sanciones impuestas a los policías municipales en el caso de epígrafe. Así lo reconoció el Comisionado al advertirle a los policías disciplinados su derecho de solicitar una vista de apelación ante la CIPA, hecho que estos funcionarios llevaron a cabo. Sin embargo, el propósito de la apelación interpuesta no era la impugnación de ordenanza municipal u orden ejecutiva alguna, sino solicitar la revisión de una medida disciplinaria impuesta. En dicho proceso, la CIPA tenía la autoridad para confirmar, revocar o modificar la determinación apelada. *Id.* No obstante, la CIPA no podía ejercer dicha facultad en abstracción del derecho. Por ende, igualmente estaba autorizada para interpretar la Ley Núm. 19, según enmendada por la Ley Núm. 45, y resolver la apelación conforme a ello.[5]

En el caso de autos, luego de la celebración de los procesos de rigor, la CIPA concluyó que, en vista del mandato legislativo plasmado en la Ley Núm. 45, el Alcalde no podía subdelegar la autoridad para sancionar a

_____

[5] Es un principio rector de nuestro ordenamiento jurídico administrativo que las agencias --como la CIPA-- no sólo están facultadas para formular conclusiones de derecho, sino que éstas deberán ser sostenidas por los tribunales en la medida en que se ajusten al mandato de ley. *Martínez Segarra v. Rosado Santoni*, res. el 14 de septiembre de 2005, 2005 TSPR 127.

los policías municipales que cometieran faltas graves. Conforme a lo anterior, resolvió que el Comisionado no tenía la facultad para imponer las sanciones apeladas, razón por la cual revocó el dictamen, sin perjuicio de que el Alcalde pudiera reiniciar los procesos disciplinarios.

Es nuestro criterio que la CIPA actuó conforme a sus facultades y responsabilidades administrativas, pues tenía el deber de revisar que la sanción impuesta se ajustara al derecho. Su determinación fue producto de una interpretación de ley y no requería pasar juicio sobre ninguna ordenanza municipal u orden ejecutiva del Alcalde. El efecto incidental que pudiera haber tenido dicha determinación administrativa sobre una ordenanza municipal o una orden ejecutiva no altera nuestra conclusión, toda vez que, tanto las conclusiones de la CIPA como las piezas legislativas municipales tienen que ajustarse por obligación al mandato de ley. No podemos olvidar que los municipios son criaturas de la Asamblea Legislativa, no viceversa. En vista de ello, el argumento del Municipio sobre este asunto carece de méritos.

En conclusión, resolvemos que el Alcalde no podía subdelegar al Comisionado de la Policía Municipal la facultad para imponer medidas disciplinarias a aquellos policías municipales que incurrieran en faltas graves, a la luz del ordenamiento jurídico vigente al momento de dicha delegación. Por consiguiente, se confirma la

sentencia del antiguo Tribunal de Circuito de Apelaciones y, en consecuencia, la resolución emitida por la Comisión de Investigación, Procesamiento y Apelación en el caso de epígrafe.

IV

Por los fundamentos que anteceden, se confirma la Sentencia emitida por el entonces Tribunal de Circuito de Apelaciones.

Se dictará Sentencia de conformidad.


FEDERICO HERNÁNDEZ DENTON
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Omar Ortiz López y Otros

    Recurridos

       vi.                  CC-2003-580      Certiorari

Municipio de San Juan

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 20 de abril de 2006.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la Sentencia emitida por el entonces Tribunal de Circuito de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo