El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
En esta ocasión, nos corresponde determinar si el alcalde del Municipio de San Juan, Hon. Jorge Santini Padilla, podía delegar al Comisionado de Policía y Seguridad Pública del municipio algunos de sus poderes al amparo de la Ley de la Policía Municipal, Ley Núm. 19 de 12 de mayo de 1977, según enmendada, 21 L.P.R.A. see. 1061 et seq. De *185 contestar dicha interrogante en la afirmativa, debemos resolver si, a la luz de las facultades delegadas al comisionado, éste podía expulsar a un miembro de la Policía Municipal de San Juan por incurrir en una falta grave. Por entender que el alcalde tenía la facultad de delegar ciertas funciones al comisionado, que la actuación del comisionado se ajustó a los poderes delegados por el alcalde y que no se violó el debido proceso de ley en el procedimiento de expulsión antes mencionado, revocamos la sentencia dictada por el Tribunal de Apelaciones en este caso.
I
El Sr. Julio Garriga Villanueva se desempeñaba como agente de la Policía Municipal de San Juan cuando se presentó una querella disciplinaria en su contra por hechos ocurridos en septiembre de 2006. Según la querella y las declaraciones hechas por los perjudicados y testigos, el señor Garriga Villanueva y el Sr. Alberto Viera Solía, en su capacidad de agentes de la Policía Municipal de San Juan, intervinieron con unos ciudadanos que se encontraban en las afueras de un negocio localizado en el área de Caparra Terrace en horas de la madrugada porque alegadamente detectaron un fuerte olor a marihuana en el lugar. Supuestamente, luego de registrar a los tres jóvenes allí presentes y de no encontrar evidencia de delito alguno, ambos agentes comenzaron a agredirlos con las manos, a patearlos y a golpearlos con un bate y otros instrumentos.
Ante estos hechos, los jóvenes presentaron una querella contra ambos agentes. Oportunamente, la División de Inspección y Asuntos Disciplinarios del Departamento de Policía y Seguridad Pública del Municipio de San Juan notificó al señor Garriga Villanueva sobre la querella presentada en su contra. A tales efectos, se le indicó que se realizaría una investigación sobre los hechos alegados en ésta y que se le citaría para que proveyera su versión de lo sucedido.
*186 Luego de varios meses, se sometió el informe de la investigación realizada por la Oficial Investigadora, Sgto. Jeannette Salgado Torres, y se notificó formalmente al señor Garriga Villanueva de los cargos en su contra, apercibiéndole de la intención de expulsarlo. En esencia, se le formularon unos cargos por incumplir con los deberes y las responsabilidades que le impone el Reglamento de la Policía Municipal de San Juan y por incurrir en faltas graves al utilizar violencia injustificada y agredir a los jóvenes, entre otros cargos. La formulación de cargos se realizó mediante una carta firmada por el entonces Director Interino del Departamento de Policía y Seguridad Pública del Municipio de San Juan, Col. Adalberto Mercado Cuevas.
Posteriormente, a instancias del querellado, se celebró una vista administrativa en la División de Inspección y Asuntos Disciplinarios del Departamento de Policía y Seguridad Pública del Municipio de San Juan ante la Oficial Examinadora, Tnte. María Rivera Rivera. Esta emitió una resolución en la que recomendó la expulsión del señor Garriga Villanueva. Su recomendación fue acogida por el coronel Mercado Cuevas, quien, en su carácter de Comisionado de Policía y Seguridad Pública del Municipio de San Juan, formalmente expulsó al señor Garriga Villanueva mediante una carta en febrero de 2007. De la referida carta se infiere que la actuación del comisionado respondió a la delegación que le hiciera el alcalde mediante la Orden Ejecutiva JS-149, Serie 2004-2005, de 16 de marzo de 2005.
Inconforme con tal determinación, el señor Garriga Villanueva apeló oportunamente su expulsión ante la Comisión de Investigación, Procesamiento y Apelación (CIPA). La CIPA celebró la correspondiente vista y emitió una resolución en julio de 2007 en la que revocó la expulsión del señor Garriga Villanueva. En síntesis, dicha agencia razonó que, según la Ley de la Policía Municipal, el comisionado es quien tiene la facultad de formular los cargos por *187 faltas graves a los miembros del cuerpo policiaco, mientras que al alcalde le compete resolver el caso e imponer la sanción correspondiente. Por tal razón, determinó que la delegación de poderes que hiciera el alcalde al comisionado, a los efectos de permitirle expulsar a miembros de la Policía Municipal de San Juan, fue contraria a la ley.
Insatisfecho con la decisión de la CIPA, el Municipio de San Juan presentó un recurso de revisión administrativa ante el Tribunal de Apelaciones. Dicho foro resolvió que la delegación realizada por el alcalde estaba permitida por la Ley de la Policía Municipal, en virtud de una enmienda introducida por la Ley Núm. 533 de 30 de septiembre de 2004. No obstante, el foro apelativo concluyó que el hecho de que hubiera sido el comisionado quien firmara tanto la formulación de cargos como la expulsión, constituía una violación al debido proceso de ley, ya que tal proceder convertía al comisionado en “juez y parte” en el procedimiento seguido contra el señor Garriga Villanueva. En vista de ello, confirmó la decisión de la CIPA y sostuvo la revocación de la expulsión.
Ante esta decisión del Tribunal de Apelaciones, el Municipio de San Juan acude a nosotros y solicita que revoquemos la sentencia emitida por dicho foro. Alega que el alcalde Santini Padilla había realizado una delegación válida de poderes al comisionado, según lo autoriza la Ley de la Policía Municipal. Por lo tanto, aduce que la expulsión del señor Garriga Villanueva fue realizada conforme a derecho. Añade, además, que el procedimiento seguido cumplió con el debido proceso de ley exigido en estos casos. Por su parte, el señor Garriga Villanueva expuso que la Ley de la Policía Municipal exigía que fuera el alcalde quien autorizara la expulsión.
Visto el recurso, expedimos el auto solicitado. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.
*188 II
A. La Ley de la Policía Municipal se adoptó en 1977 para autorizar a los municipios a establecer cuerpos policiales locales que, en coordinación con la Policía Estatal, ayudaran a controlar la actividad delictiva, a proteger la vida y la propiedad, y a mantener la seguridad pública.(1) Así, pues, dicha ley establece los poderes, las facultades y las funciones que se confieren a los cuerpos de policía municipales, así como algunos aspectos de su organización y funcionamiento interno. A través de los años, dicha ley ha sido objeto de varias enmiendas ante el deseo de los legisladores de ampliar las facultades de los agentes y atemperar los cuerpos de policía municipales a la reglamentación vigente de la Policía Estatal. Por ello, es necesario que analicemos el historial de las enmiendas a la ley y el desarrollo de ciertas disposiciones aplicables al caso de autos.
En un principio, cuando se aprobó la ley en 1977, se estableció que la autoridad superior en cuanto a la dirección del cuerpo policiaco residiría en el alcalde, pero la dirección inmediata y la supervisión estaría a cargo de un comisionado designado por éste. Véase See. 4 de la Ley Núm. 19, supra, 21 L.P.R.A. sec. 1064. Entre las facultades conferidas al alcalde, como autoridad máxima de la Policía Municipal, se encontraba la de adoptar un reglamento que estableciera la organización y administración del cuerpo y regulara las obligaciones, las responsabilidades y la conducta de los miembros, entre otros asuntos. Véase See. 5 de la Ley Núm. 19, supra, 21 L.P.R.A. sec. 1065.
En cuanto al procedimiento aplicable a los asuntos disciplinarios relacionados con faltas graves (las cuales el re *189 glamento establecería), esta ley dispuso que el comisionado debía preparar un informe sobre las imputaciones hechas a un guardia querellado y que, luego de analizar el expediente y dar al querellado la oportunidad de ser oído, formularía los cargos correspondientes, resolvería el caso e impondría la sanción que estimase necesaria, que podría ser incluso la expulsión permanente del cuerpo. Véase See. 10(a)-(e) de la Ley Núm. 19, supra, 21 L.P.R.A. see. 1070(a)-(e). Es decir, aunque el alcaldé era quien en última instancia tenía a su cargo el cuerpo de la Policía Municipal, la ley delegaba en el comisionado algunas funciones inmediatas sobre el manejo de éste, particularmente en cuanto a la autoridad disciplinaria sobre los agentes municipales.
Gran parte de las disposiciones de la Ley Núm. 19, supra, fueron modificadas tras la aprobación de la Ley Núm. 45 de 22 de mayo de 1996 (Ley Núm. 45). El objetivo principal de dicha ley fue otorgarles a los agentes municipales las mismas facultades que poseían los agentes de la policía estatal en cuanto a su carácter de agente del orden público, siempre que cumplieran con ciertos requisitos. Véase Ex-posición de Motivos de la Ley Núm. 45 (1996 Leyes de Puerto Rico 125).
La Ley Núm. 45 introdujo también varios cambios relacionados con las facultades de los comisionados. A esos efectos, enmendó la referida Sec. 10 para establecer que, en casos de policías municipales que incurrieran en faltas graves, el comisionado prepararía un informe completo al alcalde sobre las imputaciones hechas contra el agente. A base de este informe y del expediente de la querella, y luego de proveer al agente querellado la oportunidad de ser oído, el alcalde resolvería el caso e impondría la sanción correspondiente. De hecho, se especificó que el comisionado entregaría al querellado la decisión que se tomase y que ésta debía contener la firma del alcalde. Véase Art. 10 de la Ley Núm. 45, supra, 21 L.P.R.A. see. 1070. Es decir, la Ley *190 Núm. 45 traspasó a los alcaldes la facultad de tomar la decisión final sobre los asuntos relacionados con la disciplina de los policías municipales. Al decretar que sería el alcalde quien resolvería el caso y requerir que la notificación de la decisión contuviera la firma de éste, la Asamblea Legislativa limitó el poder del comisionado sobre los asuntos disciplinarios concernientes a los policías municipales.
Precisamente, así lo reconocimos en Ortiz v. Municipio San Juan, 167 D.P.R. 609 (2006), al resolver que el esquema impuesto por la Ley Núm. 45 otorgaba al alcalde el poder absoluto como autoridad nominadora de la Policía Municipal de San Juan. Además, luego de analizar las disposiciones de la Ley Núm. 45, determinamos que ésta no permitía al alcalde delegar sus facultades al comisionado, como en efecto había ocurrido en dicho caso. Por ello, sostuvimos que las enmiendas introducidas por la Ley Núm. 45 otorgaron exclusivamente al alcalde el poder disciplinario sobre los miembros de la Policía Municipal y, en efecto, limitaron la autoridad del comisionado al no permitir siquiera que el alcalde delegara tales funciones.
Ahora bien, previo a nuestra decisión en Ortiz, la Ley de la Policía Municipal fue objeto de enmiendas nuevamente al aprobarse la Ley Núm. 533 de 30 de septiembre de 2004 (Ley Núm. 533).(2) El propósito principal de esta ley fue establecer un sistema uniforme de rangos, ascensos y cadena de mando para los cuerpos de policía municipales. Véase Exposición de Motivos de la Ley Núm. 533 (2004 (Parte 3) Leyes de Puerto Rico 3532). Sin embargo, dicha ley también introdujo un cambio significativo a la See. 4 de la Ley de la Policía Municipal, supra, al añadir que “\p]ara cumplir con lo establecido en esta Ley, el alcalde podrá delegar en el Comisionado todas o algunas *191 de las funciones aquí reservadas al primero”. (Énfasis suplido). Art. 2 de la Ley Núm. 533 (21 L.P.R.A. see. 1064). Así, pues, se flexibilizó el esquema directivo del cuerpo de la Policía Municipal al autorizar al alcalde la subdelegación de sus funciones en el comisionado. Es decir, a pesar de que la Ley Núm. 533 no introdujo cambio alguno al esquema de autoridad establecido en la Ley Núm. 45 en cuanto a los asuntos disciplinarios por faltas graves, la referida enmienda autoriza al comisionado a ejercer cualquiera de las funciones disciplinarias que la propia Ley de la Policía Municipal, en su Sec. 10, supra, le reserva al alcalde, siempre que éste haga la delegación correspondiente. Véanse: Sees. 4 y 10 de la Ley Núm. 19, supra.
Según fue presentado originalmente, el proyecto no incluía esa autorización al alcalde para delegar sus funciones al comisionado. Véase P. de la C. 3094 de 17 de octubre de 2002. No obstante, el texto del proyecto de ley se enmendó para incluir dicha frase y así fue aprobado por la Cámara de Representantes y el Senado. De hecho, resulta importante señalar que en el historial legislativo del referido proyecto obra una comparecencia de la entonces Administradora Interina de la Oficina Central de Asesoramiento Laboral y Administración de Recursos Humanos del Estado Libre Asociado de Puerto Rico (OCALARH), que ex-presa reservas sobre la autorización al alcalde de delegar en el comisionado todas o algunas de las facultades que la ley le otorga. Específicamente, OCALARH señaló que la facultad de destituir a un empleado debía recaer en la autoridad nominadora que en el caso de la policía municipal era el alcalde, y recomendó que se hiciera una aclaración a tales efectos. Véase Carta de la Oficina Central de Asesoramiento Laboral y Administración de Recursos Humanos de 28 de junio de 2004, Historial Legislativo, P. de la C. 3094 de 17 de octubre de 2004. A pesar de ello, la Asamblea Legislativa rechazó la recomendación de OCALARH y aprobó el proyecto con la enmienda que permite al alcalde *192 la referida delegación de funciones. Por lo tanto, es evidente que la intención legislativa fue conferir al alcalde la facultad de delegar sus funciones en el comisionado.
Con estos preceptos en mente, pasemos a analizar concretamente la controversia ante nuestra consideración.
B. El Municipio de San Juan alega que la expulsión del señor Garriga Villanueva del cuerpo de la Policía Municipal fue efectuada conforme al derecho vigente. Según el municipio, el Comisionado de Policía y Seguridad Pública del Municipio de San Juan tenía la autoridad para resolver el caso y expulsar al señor Garriga Villanueva, ya que el alcalde había emitido una orden ejecutiva en la que le delegaba dicha función disciplinaria. Por su parte, el señor Garriga Villanueva argumenta, y así lo entendió la CIPA, que la delegación de poderes que puede hacer el alcalde al comisionado se refiere sólo a aquello que tenga que ver con el sistema de rangos y mérito que se introdujo mediante las enmiendas de la Ley Núm. 533, supra. No le asiste la razón.
En materia de interpretación de las leyes, el Art. 14 del Código Civil establece que “[c]uando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu”. 31 L.P.R.A. sec. 14. Cuando el lenguaje de la ley es claro, su propio texto es la mejor expresión de la intención legislativa. Depto. Estado v. U.G.T., 173 D.P.R. 93 (2008); Ortiz v. Municipio San Juan, supra, pág. 617; Irizarry v. J & J Cons. Prods. Co., Inc., 150 D.P.R. 155, 164 (2000). De igual forma, cuando nos disponemos a analizar una enmienda a una ley, debemos asumir que la intención de la Asamblea Legislativa fue modificar el ordenamiento existente para añadir o eliminar derechos. Ortiz v. Municipio San Juan, supra, pág. 617.
En este caso, el lenguaje claro de la ley autoriza al alcalde a delegar todas o algunas de sus facultades al comisionado para cumplir con lo allí establecido. Resulta evi *193 dente, pues, que no se quiso limitar las funciones que podía delegar el alcalde a unos u otros asuntos ni imponer excepciones o limitaciones a dicha facultad, sino que se extendió a cualquiera de las funciones que le fueron asignadas por la ley.
Aunque ciertamente el propósito principal de la Ley Núm. 533 fue establecer un sistema de rangos y mérito en los cuerpos de policía municipales, el lenguaje añadido a la See. 4, supra, en cuanto a las facultades del comisionado, no limita de manera alguna las facultades que le puede delegar el alcalde. Si el legislador hubiese querido limitar las facultades que el alcalde podía delegar al comisionado a sólo aquellas relacionadas con el sistema de rangos, así lo hubiese indicado en la See. 7 de la ley, 21 L.P.R.A. see. 1067, que es la que dispone lo pertinente a ese sistema. Véase 21 L.P.R.A. sees. 1067—1067a. No obstante, decidió autorizar al alcalde a realizar la referida delegación mediante la enmienda incluida en la See. 4, que contiene a grandes rasgos las funciones del comisionado. 21 L.P.R.A. see. 1064.
Precisamente amparado en la letra de la ley, el alcalde del Municipio de San Juan emitió la orden ejecutiva el 16 de marzo de 2005, en la que delegó en el Comisionado de Policía y Seguridad Pública la facultad de “fir-mar terminaciones de períodos probatorios, formulaciones de cargo [s] por violaciones al Reglamento de la Policía Municipal de San Juan, cesantías o determinaciones finales de cargos por faltas leves y faltas graves a miembros del Cuerpo de la Policía Municipal de San Juan”. Véase Orden Ejecutiva Núm. JS-149, supra.(3)
*194 De la referida orden ejecutiva se desprende claramente que el alcalde decidió hacer uso de la facultad que le otorga la See. 4 de la Ley de la Policía Municipal, supra, y transfirió al comisionado las funciones relacionadas con los procedimientos disciplinarios que le confiere la Sec. 10 de dicha ley, supra. Así, pues, el coronel Mercado Cuevas quedó facultado para resolver el caso contra el señor Garriga Villanueva por las faltas graves que se le imputaron y, luego de seguir el procedimiento dispuesto, determinar que la sanción correspondiente era la expulsión. Consideramos que la acción del comisionado estaba dentro de las facultades que el alcalde le delgó, por lo que su actuación fue conforme a derecho.
En su comparecencia ante nos, el señor Garriga Villanueva señala que este Tribunal resolvió en Ortiz v. Municipio San Juan, supra, que la Ley de la Policía Municipal facultaba sólo al alcalde a resolver los casos disciplinarios contra miembros de la Policía Municipal, por lo que éste estaba impedido de delegar tal función en el comisionado. Sin embargo, como señalamos anteriormente, a pesar de que el caso Ortiz se resolvió luego de la aprobación de la Ley Núm. 533, los hechos que dieron lugar a ese caso ocurrieron antes de su aprobación, cuando aún estaba vigente la Ley Núm. 45. Es por ello que resolvimos que el alcalde no podía delegar su autoridad disciplinaria en el comisionado. No obstante, también advertimos que la Ley Núm. 533 había modificado lo concerniente a la subdelega *195 ción de poderes del alcalde al comisionado. Véase Ortiz v. Municipio San Juan, supra, pág. 619 esc. 3.
Aún así, el señor Garriga Villanueva alega que en dicho caso añadimos que “[s]i podemos concluir razonablemente que la Asamblea Legislativa tuvo la intención de que una función particular fuera realizada por la persona designada en la ley debido a sus capacidades o cualidades especiales, la subdelegación de dicha función ser[ía] inválida”. Ortiz v. Municipio San Juan, supra, pág. 620 esc. 4. Esta expresión no varía en nada nuestra conclusión en el caso de autos. En primer lugar, debemos señalar que en aquella ocasión hicimos tal aclaración precisamente para resolver que, de acuerdo con la Ley Núm. 45, el alcalde no podía delegar sus poderes porque la intención legislativa fue conferirle exclusivamente dichas facultades. Según el ordenamiento entonces vigente, la actuación del alcalde fue inválida. En segundo lugar, nada de lo dispuesto en la ley y sus enmiendas nos lleva a concluir que se delegó dicha función al alcalde por poseer capacidades o cualidades especiales que impiden que sea otro funcionario autorizado por éste quien lleve a cabo y resuelva los procedimientos disciplinarios contra los miembros de los cuerpos de policía municipales. Dichas funciones se delegaron por su carácter de autoridad nominadora, mas como concluimos anteriormente, se autorizó que pudiera subdelegarlas en el comisionado para que éste pudiera llevarlas a cabo en su lugar. Véase See. 4 de la Ley Núm. 19, supra.
En vista de todo lo anterior, concluimos que la delegación realizada por el alcalde Santini Padilla al comisionado para resolver los casos disciplinarios de los policías municipales de San Juan fue correcta, conforme a la letra clara de la Ley de la Policía Municipal.
*196 III
Ahora bien, en este caso el Tribunal de Apelaciones concluyó que a pesar de que el comisionado tenía la facultad de expulsar al señor Garriga Villanueva en virtud de una delegación válida de poderes por parte del alcalde, dicha expulsión había sido errónea por no cumplirse con los requisitos mínimos del debido proceso de ley en cuanto a un adjudicador imparcial. Luego de analizar el asunto detenidamente, concluimos que incidió el foro apelativo al resolver así.(4)
Es norma firmemente arraigada en nuestro ordenamiento jurídico que, previo a interferir con los intereses propietarios o libertarios de un ciudadano, el Estado debe cumplir con las exigencias del debido proceso de ley. Véase Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1. El concepto debido proceso de ley tiene dos vertientes: la sustantiva, que se refiere a la validez de las leyes que implementa el Estado en cuanto a su protección de los derechos de los ciudadanos, y la procesal, que se enfoca en garantizar un proceso justo y equitativo ante acciones estatales que interfieran con intereses privados. San Gerónimo Caribe Project v. A.R.Pe., 174 D.P.R. 640 (2008); U. Ind. Emp. A.E.P. v. A.E.P., 146 D.P.R. 611, 616-617 (1998); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 887— 888 (1993).
En el ámbito de los empleados públicos, hemos reconocido que aquellos que hayan adquirido un interés propietario en su puesto están cobijados por las garantías *197 del debido proceso de ley, en su vertiente procesal, previo a ser destituidos o separados de su empleo. U. Ind. Emp. A.E.P. v. A.E.P., supra, pág. 618; Orta v. Padilla Ayala, 131 D.P.R. 227, 241 (1992); Torres Solano v. P.R.T.C., 127 D.P.R. 499, 519-521 (1990). Es por esto que en nuestra jurisdicción de ordinario se requiere la celebración de una vista informal antes de destituir a un empleado público, que deberá incluir una notificación adecuada de los cargos en su contra y una descripción de la prueba que posee el patrono. De igual forma, dicha vista le proveerá una oportunidad al empleado de presentar su versión de los hechos. U. Ind. Emp. A.E.P. v. A.E.P., supra, pág. 618; Marrero Caratini v. Rodríguez Rodríguez, 138 D.P.R. 215, 222 (1995); Torres Solano v. P.R.T.C., supra, págs. 526-527. Véase, además, Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532 (1985).
En su alegato ante nosotros, el señor Garriga Villanueva expone, escuetamente y sin fundamento jurídico alguno, que en los procedimientos administrativos que se llevan a cabo por el comisionado, éste es juez y parte, por ser quien formula los cargos e investiga al querellado. Sin embargo, no argumenta señalamiento alguno de prejuicio o parcialidad por parte de dicho funcionario. Según dispone la See. 5 de la Ley de la Policía Municipal, supra, el alcalde tiene la facultad de adoptar un reglamento que disponga sobre los asuntos organizacionales, administrativos y disciplinarios, entre otros asuntos, del cuerpo de la Policía Municipal. 21 L.P.R.A. see. 1065. En el caso del Municipio de San Juan, mediante la Ordenanza Núm. 11, Serie 2002-2003 (P. de O. Núm. 10, Serie 2002-2003), aprobada el 2 de octubre de 2002, se adoptó el Código de Seguridad Pública del Municipio de San Juan, el cual contiene, en su Capítulo IV, el Reglamento de la Policía Municipal de San Juan.
En dicho reglamento, el Art. 4.16 dispone todo lo relacionado con las acciones disciplinarias contra los *198 miembros de la Policía Municipal. En cuanto al procedimiento a seguir, el Art. 4.16(c) establece que el comisionado iniciará una investigación dentro de los 10 días de presentada la querella.(5) De ser necesario, se procederá a realizar una formulación de cargos, los cuales contendrán una relación de los hechos que dan base a la querella, así como las faltas que se imputan. En dicha formulación de cargos se advertirá al agente querellado de su derecho a solicitar una vista administrativa dentro de los 15 días siguientes, la cual se celebrará ante un oficial examinador designado por el comisionado. Durante la vista, el querellado tendrá derecho a presentar prueba a su favor y comparecer asistido de abogado. Luego, se tomará la acción disciplinaria correspondiente, advirtiéndole al querellado de su derecho de apelar tal decisión ante el organismo apelativo administrativo correspondiente.
En el caso del señor Garriga Villanueva, dos días luego de presentada la querella en su contra el Director Interino de la División de Inspección y Asuntos Disciplinarios del Departamento de Policía y Seguridad Pública del Municipio de San Juan, Tnte. Rodolfo Martí Saurí, notificó al agente sobre la querella, el inicio del proceso de investigación y su oportunidad de exponer su versión de los hechos. Más adelante, se sometió el informe de la investigación realizada por la sargento Salgado Torres. En vista de ello, se entregó al señor Garriga Villanueva un documento en el que se le formularon los cargos correspondientes según los hechos relatados en la querella y se le imputaron unas violaciones a varias faltas graves. Además, se le notificó sobre la intención de expulsarlo del Cuerpo de la Policía Municipal y se le apercibió de su derecho de solicitar una vista administrativa. El documento de formulación de car-gos fue firmado por el coronel Mercado Cuevas.
*199 Oportunamente, el señor Garriga Villanueva solicitó una vista, la cual se celebró ante la oficial examinadora, teniente Rivera Rivera. En esta vista, el querellado optó por no presentar prueba alguna su favor, y meramente se limitó a alegar —a través de su representación legal— que las imputaciones eran falsas y que había una investigación pendiente ante el Negociado de Investigaciones Especiales, por lo que solicitó que se le permitiera permanecer en el empleo hasta tanto culminara dicha investigación. Concluido el procedimiento, el 22 de febrero de 2007 se le notificó la resolución final, firmada por el coronel Mercado Cuevas en su carácter de Comisionado del Departamento de Policía y Seguridad Pública, en la cual se le expulsó del Cuerpo de la Policía Municipal de San Juan.
Contrario a lo que señala el Tribunal de Apelaciones, es evidente que las diferentes etapas del proceso disciplinario contra el señor Garriga Villanueva se llevaron a cabo por distintos funcionarios de la Policía Municipal. Por ello, es inmeritorio el argumento de que fue el propio comisionado el que realizó la formulación de cargos, la investigación y la adjudicación. La investigación fue realizada por una agente de la Policía Municipal y la formulación de cargos la firmó el comisionado a base de dicha investigación. De otra parte, la vista administrativa se celebró ante una oficial examinadora, la cual hizo su recomendación al comisionado. Fue éste, en virtud de la ley, el reglamento y la delegación que le hiciera el alcalde, quien tomó la determinación final a base de los resultados de la investigación y de las recomendaciones de los funcionarios de la Policía Municipal autorizados por él para llevar a cabo esas funciones.
En cuanto a la conclusión del foro apelativo de que el comisionado es “juez y parte” y que, por ello, no es un adjudicador imparcial, sostenemos que el esquema de funciones de la Policía Municipal de San Juan no presenta problema alguno con relación a la separación de funciones de *200 investigar, acusar y decidir. Véase D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Colombia, Ed. Forum, 2001, Sec. 4.4, págs. 193-194. Del expediente surge que fueron distintos funcionarios los que intervinieron en cada una de las etapas del proceso. Dichos funcionarios recomendaron el curso a seguir al comisionado, quien tomó la decisión final, según autorizado por el alcalde y el ordenamiento jurídico vigente. En ausencia de imputaciones de prejuicio y parcialidad por parte de cualquiera de estos funcionarios, concluimos que el señor Garriga Villanueva tuvo un adjudicador imparcial en la persona del Comisionado de Policía y Seguridad Pública del Municipio de San Juan.
En el caso de autos se cumplió con el debido proceso de ley exigido en casos de empleados públicos. Ello es así ya que el señor Garriga Villanueva fue notificado adecuadamente de los cargos en su contra, se le proveyó una copia de la prueba obtenida por el municipio y se le dio la oportunidad de ser oído en una vista informal, en la que optó por no presentar prueba. Por lo tanto, es innegable que el Municipio de San Juan ofreció al señor Garriga Villanueva las garantías mínimas que exige el debido proceso de ley en este contexto.
En vista de todo lo anterior, resolvemos que la expulsión del señor Garriga Villanueva del Cuerpo de la Policía Municipal de San Juan fue realizada correctamente, en conformidad con la Ley de la Policía Municipal y el Reglamento de la Policía Municipal de San Juan, y salvaguardando los derechos que le garantiza el debido proceso de ley.
IV
Por los fundamentos antes expuestos, revocamos la sentencia del Tribunal de Apelaciones. En consecuencia, con *201 firmamos la expulsión del señor Garriga Villanueva del Cuerpo de la Policía Municipal de San Juan.

Se dictará Sentencia de conformidad.

 Cuando se adoptó la ley en 1977, ésta disponía que se conocería comúnmente como Ley de la Guardia Municipal. Sin embargo, entre las enmiendas realizadas a través de la Ley Núm. 45 de 22 de mayo de 1996, se incluyó un cambio en el nombre del estatuto para conocerlo como Ley de la Policía Municipal.

 Los hechos del caso Ortiz v. Municipio San Juan, 167 D.P.R. 609 (2006), ocurrieron antes de aprobación de la Ley Núm. 533 de 30 de septiembre de 2004, por lo que, a pesar de haberse resuelto en el 2006, la ley aplicable era la Ley Núm. 45, supra.

 En esta Orden Ejecutiva, el alcalde Santini Padilla utilizó el Art. 3.009(x) de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (Ley de Municipios Autónomos), 21 L.P.R.A. sec. 4109(x), como base legal de la delegación de poderes en el comisionado. No obstante, en el 2006 resolvimos el caso Ortiz v. Municipio San Juan, supra, y aclaramos que dicho artículo de la Ley de Municipios Autónomos no autoriza al alcalde a realizar tal delegación, ya que los asuntos *194 disciplinarios relacionados con los cuerpos de policía municipales se rigen por la Ley Núm. 19 de 12 de mayo de 1977, según enmendada, 21 L.P.R.A. see. 1061 et seq. Así, pues, el alcalde Santini Padilla emitió una segunda Orden Ejecutiva el 6 de junio de 2007 sólo para aclarar que la autoridad de delegar funciones en el comisionado surgía de la Ley Núm. 533, supra, y no de la Ley de Municipios Autónomos. Véase Orden Ejecutiva JS-228, Serie 2006-2007. A pesar de que la Orden Ejecutiva JS-149 en la que el alcalde hizo la delegación en el comisionado se promulgó citando la disposición legal incorrecta, lo importante es que en efecto haya tenido la autoridad legal para hacerlo. En este caso, la Orden Ejecutiva fue emitida en marzo de 2005, luego de la vigencia de la Ley Núm. 533, supra, que lo autorizó a esto. Por lo tanto, a pesar de citar la disposición legal equivocada, la Orden Ejecutiva JS-149 fue una delegación válida de poderes por parte del alcalde al comisionado.

 Debemos aclarar que dicha determinación fue tomada por el foro apelativo motu proprio, pues el señor Garriga Villanueva no había impugnado el procedimiento llevado a cabo en su contra ni había reclamado violación alguna al debido proceso de ley. Además, en ningún momento el señor Garriga Villanueva ha impugnado los méritos de los cargos en su contra ante este Tribunal ni ante los foros inferiores. Su ataque al procedimiento se ha enfocado enteramente en la capacidad del funcionario que lo resolvió. En vista de ello, no consideraremos los hechos particulares imputados en la querella.

 El Art. 4.16(a)(5) autoriza al comisionado a nombrar un funcionario que tenga la facultad para investigar y hacerle recomendaciones en cuanto a la acción disciplinaria a tomarse contra el agente querellado.