Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| ÁNGEL GABRIEL RODRÍGUEZ MEDINA, EN SU CAPACIDAD DE LEGISLADOR MUNICIPAL Y PRESIDENTE DE LA LEGISLATURA MUNICIPAL DE HUMACAO; LEGISLATURA MUNICIPAL DE HUMACAO<br><br>Peticionarios<br><br>v.<br><br>JULIO GÉIGEL PÉREZ, EN SU CAPACIDAD DE ALCALDE DEL MUNICIPIO AUTÓNOMO DE HUMACAO<br><br>Recurridos | KLCE202401160 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Civil Núm.: HU2024CV01463<br><br>Sobre: *Injunction* (Entredicho Provisional, *Injunction* Preliminar y Permanente) y otros |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 6 de noviembre de 2024.

Comparece el señor Ángel G. Rodríguez Medina en su capacidad de legislador municipal (legislador municipal o peticionario) y nos solicita que revisemos una *Resolución* dictada y notificada el 22 de octubre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI o foro primario). Por medio del dictamen apelado, el TPI concedió un término para que el alcalde, Julio Géigel Pérez, del Municipio de Humacao (alcalde o recurrido) se expresara sobre los argumentos esbozados durante la vista celebrada el 10 de octubre de 2024.

Por los fundamentos que expondremos a continuación, ***desestimamos*** el recurso de epígrafe **por prematuro** y devolvemos el caso al TPI para la continuación de los procedimientos de acuerdo con esta *Resolución.*

Número Identificador

RES2024 _____

**I.**

Con fecha de 29 de septiembre de 2024, el legislador municipal instó un pleito sobre la aprobación de la Orden Ejecutiva Núm. 74, Serie 2024-2025, (Orden Ejecutiva Núm. 74), en la que se declaraba un estado de emergencia en el Municipio de Humacao (Municipio), durante la vigente temporada de Huracanes, a los fines de establecer tareas de mitigación de posibles daños, limpieza de calles, entre otras labores. Alegó el peticionario que la Orden Ejecutiva Núm. 74 era *ultra vires* por crear un estado de emergencia irreal, en ausencia de algún suceso inesperado e imprevisto que, de manera inmediata, tuviere que atender el Municipio, esto con el fin de simplificar o preterir el ordenamiento jurídico. Adujo que la referida Orden Ejecutiva Núm. 74 debía considerarse como un subterfugio para aplicar de forma errada el Artículo 2.036(b) y (c) de la Ley Núm. 107 de 13 de agosto de 2020, según enmendada[1], conocida como Código Municipal de Puerto Rico, esto es, que se le permitiese atender situaciones de emergencia sin limitación de cantidad alguna y sin tener que celebrar subasta pública, *con el propósito de suspender los trámites ordinarios de compra de bienes y servicios, así como los límites a los gastos presupuestarios y a la concesión de donativos, que buscan promover la transparencia y la sana administración pública[2]*. Solicitó al TPI que paralice la ejecución de la Orden Ejecutiva Núm. 74, Serie 2024-2025, ya fuese por medio de un interdicto provisional o por una orden de entredicho provisional y, además, que declare nula, ilegal y ultra vires la referida orden por ser contraria a la Ley Núm. 107 de 13 de agosto de 2020.

Así las cosas, el 30 de septiembre de 2024, el TPI emitió una *Resolución[3]*, en la que declaró No Ha Lugar la solicitud de

---

[1] 21 LPRA secc.7212.
[2] Apéndice 1 del recurso.
[3] Apéndice 3 del recurso.

entredicho provisional por incumplir con la Regla 57.1 de las de Procedimiento Civil[4], en específico, por incumplir con la notificación previa a la parte adversa o sus representantes legales de la presentación de la Demanda. Además, le concedió al recurrido cinco (5) días para que expusiera su alegación responsiva. Ese mismo día, el peticionario presentó ante la consideración del TPI *Enmienda a Moción Solicitando Orden de Entredicho Provisional y Solicitud de Reconsideración*[5]. En síntesis, arguyó que la notificación previa al demandado tendría el efecto de agravar los daños inminentes e irreparables alegados en la demanda de Injunction y sentencia declaratoria, toda vez que, permitiría a éste acelerar los trámites de adquisiciones y concesión de donativos sin tener que cumplir con los procesos ordinarios y limitaciones aplicables al periodo eleccionario, en virtud de una orden ejecutiva dictada ilegalmente, por lo que solicitó reconsideración.

El TPI emitió *Orden de Entredicho Provisional*[6], declaró HA LUGAR la solicitud de reconsideración y ordenó al señor alcalde a detener la ejecución y/o implementación de cualesquiera ejecutorias que estén basadas en la declaración de emergencia de la Orden Ejecutiva Núm. 74. Razonó que *la orden de autos se expide sin notificación previa y expirará dentro de un período de 10 días. Dicho término puede ser prorrogado dentro del término así fijado por causa justa probada y por un período de tiempo igual, o a menos que la parte contra la cual se haya dictado la orden dé su consentimiento para que sea prorrogada por un período mayor*[7].

Por otra parte, el 10 de octubre de 2024, el recurrido presentó *Moción de Desestimación y en Oposición a Expedición del*

---

[4] 32 LPRA Ap. V, R. 57.1.
[5] Apéndice 4 del recurso.
[6] Apéndice 5 del recurso.
[7] *Íd.*

*Interdicto Permanente*[8]. A modo de sinopsis, el recurrido arguyó que el peticionario no había presentado un caso justiciable ante el TPI, por lo cual no tiene legitimación activa y la controversia, si alguna, no está madura, por ello, solicitó que se desestimen todas sus causas de acción. En la alternativa, requirió que se determine que el peticionario no cumplió con los requisitos reglamentarios y jurisprudenciales necesarios para la expedición del interdicto preliminar y que tampoco cumple con los requisitos necesarios para la expedición del interdicto permanente, por lo cual, solicita que se denieguen los remedios solicitados. También, esbozó que el peticionario no ha demostrado la ausencia de un remedio adecuado en ley ni ha probado la existencia de un daño irreparable, tal como se requiere para la concesión de un 'injunction' preliminar o permanente. Dado que el supuesto daño es hipotético y no inmediato, no se cumple con este requisito esencial para el otorgamiento del injunction. Por otro lado, alegó que el recurrido no ha emitido órdenes de compra o contratos en virtud de la Orden Ejecutiva Núm. 74 ni la parte peticionaria ha presentado prueba al respecto. Por lo cual, la controversia no está madura. Tampoco se ha presentado prueba sobre el gasto de más del 50% del presupuesto ni del sobregiro del 10%, ni se ha excedido el 50% del presupuesto aprobado durante el período de veda electoral. Sin esta prueba, este Honorable Tribunal no podía basar su decisión en suposiciones o afirmaciones infundadas. Por esas razones, reiteró al TPI que desestime la demanda y que deniegue los remedios solicitados.

El 15 de octubre de 2024, el TPI notificó la *Orden Extensión Entredicho Provisional*[9] en la cual extendió la vigencia de la Orden de Entredicho Provisional hasta el 21 de octubre de 2024, de

---

[8] Apéndice 6 del recurso.
[9] Apéndice 8 del recurso.

conformidad con la Regla 57.1 de Procedimiento Civil[10]. Ese mismo día, el peticionario presentó *Oposición a Moción de Desestimación.* Concluido el término de la extensión de la *Orden de Entredicho Provisional,* el peticionario presentó *Moción Urgente Reiterando Solicitud de Injunction preliminar o extensión de orden provisional*[11].

El TPI emitió la siguiente **Orden**:

> Parte demandada, en o antes del 25 de octubre de 2024 exponga su posición. En particular, informe si da por sometida su posición en torno a la solicitud de injunction preliminar, conforme a los argumentos esbozados durante la vista celebrada el 10 de octubre de 2024, para su adjudicación correspondiente.

El 25 de octubre de 2024, el recurrido presentó *Moción en Cumplimiento de Orden*[12].

En desacuerdo, el peticionario presentó el *Certiorari* de epígrafe y le imputó al foro primario la comisión del siguiente error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA EXPEDICIÓN DE UNA ORDEN DE INJUNCTION PRELIMINAR Y LA EXTENSIÓN DE LA ORDEN DE ENTREDICHO PROVISIONAL PARA PRESERVAR EL ESTATUS *QUO* MIENTRAS SE DILUCIDAN LAS CONTROVERSIAS ANTE SU CONSIDERACIÓN.

En síntesis, el peticionario arguyó que procedía la expedición del auto de *certiorari* para evitar que el recurrido realice subastas, gastos, desembolsos por encima de los límites aplicables al periodo eleccionario, e insiste que se emita una nueva orden de entredicho.

Así las cosas, y en cumplimiento de nuestra Orden, el recurrido presentó *Alegato en Oposición a la Solicitud en Auxilio de Jurisdicción y a la Expedición del Recurso de Certiorari.* En síntesis, arguyó que el TPI tiene que resolver el asunto jurisdiccional esbozado en la *Moción de Desestimación y en Oposición a Expedición del Interdicto Permanente*[13] y en la *Oposición a Moción de Desestimación,* por lo cual, mientras no se adjudiquen estas

---

[10] 32 LPRA Ap. V, R. 57.1.
[11] Apéndice 12 del recurso.
[12] Entrada #21 de SUMAC.
[13] Apéndice 6 del recurso.

mociones, este Foro Intermedio está impedido de atender el recurso presentado por el legislador municipal.

Así pues, contando con la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[14]. La determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial[15]. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"[16]. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho"[17].

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil[18]. La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo"[19].

Asimismo, y a manera de excepción, se podrá expedir este auto discrecional en las siguientes instancias:

> [C]uando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a

---

[14] Véase *Torres González v Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001).

[15] *Íd.*

[16] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2014); *Negrón v. Srio. de Justicia, supra*, pág. 91.

[17] *Íd.*

[18] 32 LPRA Ap. V, R. 52.1.

[19] *Íd.*

privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia[20].

En consecuencia, las determinaciones que cumplan con la Regla 52.1 de las de Procedimiento Civil, *supra*, pueden ser objeto de revisión y el tribunal apelativo ejercerá su discreción para decidir si expide o no el recurso de *certiorari*. Los criterios que este Tribunal de Apelaciones examina para ejercer su discreción se encuentran recogidos en la Regla 40 de nuestro Reglamento, 4 LPRA XXII-B, R. 40. Esta norma procesal dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, para ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios antes enumerados, se justifica nuestra intervención, pues distinto al recurso de apelación, este tribunal posee discreción para expedir el auto de *certiorari*[21]. Por supuesto, esta discreción no opera en el vacío y en ausencia de parámetros que la dirijan[22]. Precisa

---

[20] *Íd.*

[21] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).

[22] *I.G. Builders et al. v. BBVAPR, supra*; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580 (2011).

recordar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera[23]". Así pues, se ha considerado que la discreción se nutre de un juicio racional cimentado en la razonabilidad y en un sentido llano de justicia y "no es función al antojo o voluntad de uno, sin tasa ni limitación alguna"[24].

**-B-**

"La jurisdicción es el poder o autoridad con el que cuenta un tribunal para considerar y decidir los casos y controversias ante su consideración"[25]. Ha resuelto el Tribunal Supremo de Puerto Rico que "los tribunales debemos ser celosos guardianes de nuestra jurisdicción, estando obligados, incluso, a considerar dicho asunto *motu proprio*[26].

Y es que, la ausencia de jurisdicción sobre la materia tiene las siguientes consecuencias:

> (1) no es susceptible de ser subsanada;
> (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela;
> (3) conlleva la nulidad de los dictámenes emitidos;
> (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción;
> (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso,
> (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*[27].

Por ello, cuando un tribunal determina que no tiene jurisdicción sobre la materia, solo puede así declararlo y desestimar el caso[28].

---

[23] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013).
[24] *Íd.*
[25] *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico*, 204 DPR 89 (2020). *Torres Alvarado v. Madera Atiles*, 202 DPR 495 (2019).
[26] *Juliá et al. v. Epifanio Vidal, S.E.*, 153 DPR 357 (2001); *Vázquez v. A.R.P.E.*, 128 DPR 513 (1991); *Martínez v. Junta de Planificación*, 109 DPR 839 (1980); *Soc. de Gananciales v. A.F.F.*, 108 DPR 644 (1979); *Sánchez et al. v. Srio. de Justicia et al.*, 157 DPR 360 (2002).
[27] *Fuentes Bonilla v. ELA*, 200 DPR 364, 372-373 (2018); *Lozada Sánchez et al. v. JCA*, 184 DPR 898, 909 (2012)*; González v. Mayagüez Resort & Casino*, 176 DPR 848, 855 (2009); *Pagán v. Alcalde Mun. de Cataño*, 143 DPR 314, 326 (1997); Vázquez v. A.R.P.E., *supra*, pág. 537.
[28] *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico, supra; Lozada Sánchez v. JCA, supra.*

**-C-**

El Tribunal Supremo reiteró que, para que un tribunal intervenga en una causa:

> [e]l concepto de justiciabilidad requiere la existencia de un caso o controversia real para que los tribunales puedan ejercer válidamente el poder judicial. De modo que la intervención del Tribunal tendrá lugar únicamente si existe una controversia genuina surgida entre partes opuestas que tienen un interés real en obtener un remedio que afecte sus relaciones jurídicas[29].

No se considera una controversia justiciable cuando:

> "(1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro". Éstas son las doctrinas de autolimitación judicial[30].

**-D-**

La Regla 57 de Procedimiento Civil[31], y los Artículos 675 y 687 del Código de Enjuiciamiento Civil[32], son las disposiciones de ley que regulan en nuestro ordenamiento el recurso del injunction. En particular, la Regla 57 de Procedimiento Civil establece la existencia de tres modalidades de injunction, a saber:

> (a) el entredicho provisional,
> (b) el injunction preliminar y
> (c) el injunction permanente.

En Puerto Rico, el interdicto es el instrumento más eficaz para vindicar los derechos protegidos por nuestra Constitución[33]. Este remedio provisional se emite en cualquier momento de un pleito, después de celebrada una vista en la que las partes hayan presentado prueba en apoyo y en oposición de tal solicitud[34]. Su propósito fundamental es mantener el statu quo, hasta tanto se celebre un juicio en los méritos para adjudicar la controversia en cuestión[35].

---

[29] *Ramos Rivera v. García García*, 203 DPR 379, 394 (2019).
[30] *Íd.*
[31] 32 LPRA Ap. V.
[32] 32 LPRA sec. 3521, *et seq.*
[33] *Pedraza Rivera v. Collazo Collazo*, 108 DPR 272, 276 (1979).
[34] *Mun. de Ponce v. Gobernador*, 136 DPR 776, 784 (1994).
[35] *Asoc. Vec. Villa Caparra v. Asoc. Fom. Educativo*, 173 DPR 304, 316 (2008).

Con la expedición de una orden de injunction preliminar, sea para requerir o prohibir un acto, se evita que la conducta del demandado produzca una situación que pueda convertir en académicos los reclamos del demandante y, por ende, la sentencia que en su día se dicte[36]. Además, este recurso extraordinario tiene como fin evitar que se causen perjuicios inminentes o daños irreparables a alguna persona, en los casos en que no hay otro remedio adecuado en ley[37]. El Tribunal Supremo de Puerto Rico ha reiterado que la expedición de un injunction preliminar descansa en el ejercicio de la sana discreción del tribunal[38]. Del mismo modo, el Tribunal Supremo estableció en los criterios que el foro judicial deberá evaluar al determinar si concede o no un injunction:

> "a) la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el injunction;
> b) su irreparabilidad o la existencia de un remedio adecuado en ley;
> c) la probabilidad de que la parte promovente prevalezca en los méritos"[39].

Posteriormente, la Regla 57.3 de las de Procedimiento Civil de 2009, añade los siguientes criterios:

> "(d) la probabilidad de que la causa se torne en académica;
> (e) el impacto sobre el interés público del remedio que se solicita,
> (f) la diligencia y la buena fe con que ha obrado la parte peticionaria".

De otra parte, el concepto "irreparable" significa aquello que no puede repararse, restablecerse o recompensarse de modo adecuado con dinero, o cuando la compensación no puede estimarse con seguridad[40].

---

[36] *Íd.*

[37] *E.L.A. v. Asociación de Auditores*, 147 DPR 669, 679 (1999).

[38] *Misión Ind. P.R. v. J.P. y A.A.A.,* 142 DPR 656, 680 (1997).

[39] *Puerto Rico Telephone Company v. Tribunal Superior*, 103 DPR 200, 202 (1975), *Asoc. Vec. Villa Caparra*, 173 DPR, a la pág. 319.

[40] *Loíza Sugar Co. v. Hernández y Albandoz,* 32 DPR 903 (1924).

**-E-**

Los municipios son entidades jurídicas creadas por la Asamblea Legislativa al amparo de la Sec. 1 del Art. VI de la Constitución de Puerto Rico, para atender las necesidades de la comunidad local[41].

A tales efectos, el Código Municipal de Puerto Rico, Ley Núm. 107-2020, según enmendada[42] establece como política pública del gobierno otorgar a los municipios aquellos poderes y facultades necesarias para que puedan asumir su función a favor del desarrollo social y económico de sus jurisdicciones[43].

El gobierno municipal está compuesto por el Alcalde y la Legislatura Municipal. El Alcalde es la máxima autoridad de la Rama Ejecutiva responsable por la dirección, administración y fiscalización del funcionamiento del Municipio[44].

Entre otros deberes y funciones, el Alcalde es responsable de organizar, dirigir y supervisar todas las funciones y actividades administrativas del municipio; preparar el proyecto de resolución del presupuesto general de gastos de funcionamiento del municipio; administrar el presupuesto general de gastos; dar cuenta inmediata a las autoridades competentes sobre cualquier irregularidad, deficiencia o infracción a las leyes, ordenanzas, resoluciones y reglamentos aplicables al municipio, y diseñar, formular y aplicar un sistema de administración de personal para el municipio de acuerdo con las disposiciones de esta ley y los reglamentos adoptados[45].

---

[41] *Pfizer Pharm. v. Mun. de Vega Baja*, 182 DPR 267, 286 (2011); *Ortiz v. Mun. de San Juan*, 167 DPR 609, 613 (2006)*;* Art. VI, Sec. 1, Const. de PR, LPRA, Tomo 1.

[42] 21 LPRA secc. 7001.

[43] Art. 1.003, 21 LPRA secc. 7003.

[44] Art. 1.018, 21 LPRA secc. 7028.

[45] Art. 1.018, 21 LPRA secc. 7028.

Artículo 1.018 — Facultades, Deberes y Funciones Generales del Alcalde[46]. El Alcalde será la máxima autoridad de la Rama Ejecutiva del gobierno municipal y en tal calidad le corresponderá su dirección, administración y la fiscalización del funcionamiento del municipio. El Alcalde ejercerá los siguientes deberes, funciones y facultades:

[…]

(u) Promulgar estados de emergencia, mediante orden ejecutiva al efecto. La misma contendrá los hechos que provoquen la emergencia y las medidas que se tomarán para gestionar y disponer los recursos necesarios, inmediatos y esenciales a los habitantes, por razón de la emergencia decretada. Cuando el Presidente de Estados Unidos y/o el Gobernador de Puerto Rico decrete un estado de emergencia por las mismas razones, en igual fecha y cubriendo la jurisdicción de su municipio, el Alcalde quedará relevado de emitir la suya, prevaleciendo la del Presidente de Estados Unidos y/o el Gobernador de Puerto Rico con toda vigencia como si hubiese sido decretada por el Alcalde.

(v) De decretarse un estado de emergencia, conforme a lo descrito en el inciso que antecede, el Alcalde o su representante podrá llevar a cabo todas las gestiones y labores necesarias para normalizar o restablecer el sistema de energía eléctrica, así como las instalaciones para el suministro y tratamiento de agua y aguas residuales, tras previa notificación por escrito a la Autoridad de Energía Eléctrica y/o la Autoridad de Acueductos y Alcantarillados, según corresponda. La notificación antes señalada se hará en un término no mayor de cinco (5) días previos al momento que se comenzarán las labores de reparación, reconstrucción, restauración o normalización de determinado sistema. Dicha notificación podrá emitirse de manera electrónica y será dirigida a la máxima autoridad ejecutiva de la corporación pública que corresponda. De igual forma, se notificará el día determinado en que terminarán las labores. Las corporaciones públicas antes mencionadas certificarán tales labores, de acuerdo a los estándares prevalecientes en la industria, en cumplimiento con las especificaciones de la instrumentalidad concernida, para que el municipio pueda beneficiarse de aquellos reembolsos o ayudas disponibles a través de la Agencia Federal para el Manejo de Emergencias (FEMA, por sus siglas en inglés) o de cualquier otra ayuda de entidad pública, estatal o federal, que pudiera aplicar. Dicha certificación será emitida en o antes de cinco (5) días luego de terminada la obra, de conformidad con las disposiciones de este inciso.

Una vez emitida la orden ejecutiva que declara un estado de emergencia, el Artículo 1.019 del Código Municipal de Puerto

---

[46] 21 LPRA secc. 7028.

Rico[47] requiere que el Alcalde notifique a la Legislatura Municipal en un plazo no mayor de 48 horas. Así pues, la Legislatura Municipal es por su parte el organismo responsable de ejercer las facultades legislativas conferidas por el estatuto[48].

La Legislatura Municipal, por su parte, tiene varias funciones importantes en situaciones de emergencia, entre ellas:

> [...](k) Aprobar los reglamentos para las compras, arrendamiento de equipo o ejecución de servicios para casos de emergencias provocadas por desastres. . . . . . . . .
> (l) Ratificar y convalidar las gestiones, actuaciones, gastos y obligaciones incurridas por el Alcalde en el ejercicio de la facultad conferida en este Código para los casos en que se decrete un estado de emergencia. Artículo 1.039 del Código Municipal.

Los poderes y las facultades conferidos a los municipios por el Código de Municipios Autónomos, así como por el estatuto precedente, la Ley de Municipios Autónomos, *infra,* se interpretarán liberalmente a favor de los municipios, en armonía con la buena práctica de política pública fiscal y administrativa[49].

### III.

Las cuestiones relativas a la jurisdicción de un tribunal para atender ciertas controversias se tienen que resolver con preferencia. Consecuentemente, de entrada, resolvemos que el presente recurso es prematuro y, por ello, no tenemos jurisdicción para atenderlo en sus méritos, porque el foro de instancia no ha resuelto la *Moción de Desestimación y en Oposición a Expedición del Interdicto Permanente*[50] y la *Oposición a Moción de Desestimación Moción de Reconsideración y Relevo de Sentencia* interpuesta por las partes.

---

[47] 21 LPRA secc. 7029.
[48] Art. 1.020, 21 LPRA secc. 7041.
[49] Art. 1.005, 21 LPRA secc. 7005.
[50] Apéndice 6 del recurso.

Estimamos prudente que el TPI **tiene** que atender en los méritos la moción de desestimación, la cual cuestiona la jurisdicción del foro primario.

Ante ello, resulta forzoso concluir que el recurso de *certiorari* de epígrafe es prematuro y carecemos de jurisdicción para atenderlo, por lo cual procede su desestimación[51].

### IV.

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, ***desestimamos*** el recurso de epígrafe por falta de jurisdicción por prematuro, y devolvemos el caso al TPI para que atienda en los méritos la moción de desestimación, la cual cuestiona la jurisdicción del foro primario.

**Notifíquese inmediatamente**.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Adames Soto concurre sin voto escrito.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[51] Es imprescindible destacar que la Regla 83(E) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B R. 83(E), provee lo que transcribimos a continuación sobre la **desestimación de un recurso prematuro**:
> ***Regla 83 – Desistimiento y desestimación***
> [...]
> Cuando se presente un recurso prematuro por estar pendiente de resolver una moción de reconsideración ante el Tribunal de Primera Instancia, el Tribunal de Apelaciones podrá, a petición de parte o *motu propio*, tomar medidas mientras se dilucida la moción de reconsideración para facilitar el trámite apelativo posterior en aras de la economía procesal y de la reducción de costos de las partes.